## In re GUARDIANSHIP OF WINNETT. WRIGHT, Supt., v. RIBER et al.

No.15569—Opinion Filed May 12, 1925.

Rehearing Denied Sept. 22, 1925.

**1. Insane Persons—Guardianship—Notice of Hearing.**

By virtue of section 1449, Comp. St. 1921, when a petition is filed in the county court praying that a person be declared insane or from any cause mentally incompetent to manage his property, all proper parties to such proceedings must be given five days notice of the time and place of hearing the application, and the court acquires no jurisdiction to hear the cause until the five days' notice provided by statute has elapsed.

**2. Same—Guardianship of Osage Indian— Notice to Agency Superintendent—Necessity.**

The Act of Congress, April 18, 1912 (37 Stat. L. 86), provides that where a petition is filed to declare an allottee of the Osage Tribe insane or incompetent, a copy of all papers filed in the county court shall be served on the Superintendent of the Osage Agency at the time of filing, but said superintendent is authorized, whenever the interests of the allottee requires, to appear in the county court for the protection of the interests of the allottee. Held: The Superintendent of the Osage Agency is a necessary party to the proceedings and is entitled to the five days' notice provided by statute, and the appearance of the alleged incompetent before the time set for hearing the application, and her consent to have the cause heard on the same day the petition is filed, confers no jurisdiction upon the county court to hear the application prior to the date set forth in the notice to the superintendent.

**3. Appeal and Error—Review — Appointment of Guardian for Incompetent.**

The application for the appointment of a guardian for an incompetent is a special proceeding tried to the court, and on appeal, the Supreme Court has power to, and will review all the evidence for the purpose of ascertaining whether there is sufficient competent testimony to sustain the judgment.

**4. Same—Lack of Proof of Incompetency.**

Mental incompetency or incapacity is established when there is found to exist an essential privation of the reasoning faculties, or where a person is incapable of understanding and acting with discretion in

the ordinary affairs of life, and where it is not shown that such mental incompetency exists, it is reversible error for the court to appoint a guardian of the estate of an adult person.

**5. Same.**

Evidence examined, and held, there is no competent testimony reasonably tending to sustain the allegations of incompetency as contained in the petition.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Osage County; Jesse J. Worton, Judge.

Action by E. J. Winnett and Nellie White Winnett for the appointment of a guardian of the person and estate of Nellie White Winnett, alleged Osage incompetent. From judgment appointing such guardian, J. Geo. Wright, Superintendent of the Osage Agency, appeals. Reversed and remanded, with directions.

J. M. Humphreys, for plaintiff in error.

Chas. A. Holden, Leahy, Macdonald, Holcombe, Lohman & Files, for defendants in error.

Opinion by RUTH, C. This cause was first instituted in the county court of Osage county by J. E. Winnett and Nellie White Winnett filing their petition for the appointment of Wm. Riber as guardian of the person and estate of Nellie White Winnett, and from the order appointing a guardian, J. Geo. Wright, Superintendent of the Osage Agency, appeals, first to the district court of Osage county, and thence to this court upon petition in error and case-made.

The petition praying the guardianship was filed in the county court February 12, 1924, and was signed by both the petitioner, E. J. Winnett, and the alleged incompetent, Nellie White Winnett, husband and wife, and recited as follows, to wit:

"That Nellie White Winnett is a resident of Osage county, Okla. That she has an estate of the following general character and value in the county of Osage, Okla., to wit, one and two-ninths Osage estates, including lands and mineral rights; that the next of kin and persons having care of said Nellie White Winnett are E. J. Winnett, husband, and James E. Winnett, son; and J. Geo. Wright, Superintendent of the Osage Agency. That it is necessary that a guardian be appointed for said——— for the following reasons: That she is both mentally and physically unable and incompetent to transact and look after business affairs and is liable to be imposed upon by artful and designing persons."

The application for appointment of a guardian was filed February 12, 1924, and notice thereof was served upon Nellie White Winnett on the date of filing, and hearing thereon was set for February 18, 1924, notwithstanding which the record discloses that evidence was introduced and a hearing had immediately upon the filing of the petition, to wit, February 12, 1924. True it is, the alleged incompetent appeared and testified at the hearing and consented to and requested the appointment of the guardian, and after hearing the evidence, the court did not make the order of appointment until April 18, 1924, the date set for the hearing, but the withholding of the order until the date set for the hearing did not cure the error of the court in holding the hearing on the date the petition was filed.

The alleged incompetent is an Osage Indian, and the Superintendent of the Osage Agency objected and excepted upon the ground that the five days had not intervened between the service of the notice on Nellie White Winnett and the actual hearing.

Section 1449, Comp. St. 1921 provides:

"When it is represented to the county court upon verified petition of any relative or friend, that any person is insane, or from any cause mentally incompetent to manage his property, the judge must cause notice to be given to the supposed insane or incompetent person of the time and place of hearing the case, not less than five days before the time so appointed, and such person, if able to attend, must be produced before him on the hearing."

If, under the laws of this state with regard to Indian incompetents, the alleged incompetent was the only person to be served with notice, her appearance might partake of the nature of a waiver of the five days' notice, but an insane person or a mentally incompetent person is incapable of waiving any of her rights, either by appearing before the date set for the hearing, or by consenting to the appointment of a guardian, and Congress, foreseeing that undue advantage might be taken of Indians, passed the Act of April 18, 1912 (37 Stat. L. 86), which provides as follows:

"That property of deceased and of orphan, minor, insane or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the state of Oklahoma, which are hereby extended for such purpose to the attottees of the Osage Tribe, shall in probate matters be subject to the jurisdiction of the county courts of the state of Oklahoma, but a copy of all papers filed in the county court shall be served on the Superintendent of the Osage Agency, at the time of filing, and

said superintendent is authorized, whenever the interest of the allottee requires, to appear in the county court for the protection of the interests of the allottee."

The superintendent is therefore a necessary party to the action so far as the notice of its pendency is concerned, and his plea to the jurisdiction of the court and to the hearing being had on the date the petition was filed was proper and timely.

In Martin v. O'Reilly, 81 Okla. 261, 200 Pac. 687, this court said with reference to section 6538, Rev. Laws 1910 (sec. 1449, Comp. Stat. 1921) :

"Held in a proceeding for the appointment of a guardian of a person upon the ground that such person is mentally incompetent to manage his property, that the provisions of said statute are mandatory, and unless the prescribed notice is given the court is without jurisdiction to hear and determine such proceeding."

In the foregoing case, as in the instant case, the hearing was had on the same day and date the petition was filed, and the county court being a court of original jurisdiction, and having failed to acquire jurisdiction, no jurisdiction could be conferred upon it by the consent of the incompetent, and no jurisdiction was acquired by the district court on appeal.

The statute contemplated all parties should at least have five days in which to prepare for trial, and by virtue of the Act of Congress of April 18, 1912, the Superintendent of the Osage Agency was a necessary party and was entitled to the full five days' notice. Nor does the fact that the alleged incompetent appeared and consented to the proceedings and requested the appointment, cure the defect, for if she was insane or mentally incompetent to transact ordinary business or attend to the ordinary affairs of life, she was certainly incompetent to conduct a lawsuit, and this statute was passed for the very purpose of preventing parties rushing alleged incompetents into court and having guardians appointed without notice, and on the same day and date the petition was filed.

In Re Sullivan, 77 Pac. 153, the Supreme Court of California, having under consideration a statute identical with section 1449, Comp. St. 1921, said:

"An order providing for the appointment of a guardian of an alleged incompetent will be reversed if purely a consent order."

And in McGee v. Hayes (Cal.) 59 Pac. 769, the court, considering the same statute, said:

"The personal presence of such person (the incompetent) on the hearing, and his request that the petition be granted, do not cure the fatal defects in the notice of hearing served on him."

In the foregoing case the petition was filed on March 2, 1897, and the hearing had and order made on the same date, notwithstanding the hearing was set for March 23, 1897. See Tiger v. McCallom, 89 Okla. 249, 214 Pac. 194.

In Zahn v. Obert, 60 Okla. 118, 159 Pac. 298, this court held:

"Under section 4742, Rev. Laws 1910, objection to the jurisdiction of the court, and that petition does not state facts sufficient to constitute a cause of action is never waived. The want of jurisdiction in the trial court may be raised for the first time in the appellate court.

"Parties cannot confer jurisdiction upon any court by agreement."

The application for the appointment of a guardian for an incompetent is a special proceeding, tried to the court, and on appeal, the Supreme Court has power to, and will, review all the evidence for the purpose of ascertaining whether there is sufficient competent evidence to sustain the judgment.

"Mental incompetency or incapacity is established when there is found to exist an essential privation of the reasoning powers or faculties or where a person is incapable of understanding and acting with discretion in the ordinary affairs of life. When it is not shown that such mental incompetency exists, it is reversible error for the court to appoint a guardian of the estate of an adult person."

An examination of the record discloses that Nellie White Winnett was an Osage Indian about 24 years of age and had been twice married, having a son by the first marriage. She is the owner of one Osage estate and has a two-ninths interest in another Osage estate. She receives $4,000 per year from the United States government, in addition to her rentals from her farms. She has $20,000 restricted money on deposit with the United States government. She owns and drives an automobile and visits Kansas and Missouri in the car. She testifies she is under the doctor's care and wants to go to New Mexico for her health, and that is the only reason she wants a guardian appointed. She does not use intoxicating liquors, drugs or narcotics of any character. She never made but one trade of any portion of her property, and all the witnesses agree that she out-generaled the man she traded with, and the man got much the worst of the deal, evidencing

the fact that she was more competent to handle her real estate than was the man with whom she was dealing. She purchased a diamond ring, but let it go back to the vendor because she did not keep up the payments, but this does not constitute such mental incapacity as to warrant the appointment of a guardian.

The only evidence of her having been imposed upon by artful and designing persons is: (1) That she at one time borrowed some money and she thinks she was imposed upon because the lender charged her an exorbitant rate of interest. (2) She only received 35 bushels of wheat from some of her land (acreage not stated) one bad crop year, and has been cheated out of some of her rents. Being cheated out of our rents and being charged an exorbitant rate of interest is neither a new or novel experience to landlords or borrowers in this or any other state in the United States, and is no evidence of incompetency. If it were, the bulk of the business of this country would be conducted by guardians.

The guardian appointed by the court in the instant case testified that he had known the alleged incompetent, Nellie White Winnett, about 16 years. That she approached him on the street and asked him if he would accept the guardianship of her person and property, and he agreed. The hearing was had on the same date the petition making the application was filed, and he was subsequently appointed guardian, making the fifth guardianship of Osage allottees to which he has been appointed and now holds.

The guardian testified that Nellie White Winnett was not insane; in the 16 years he had known her, he never noticed anything wrong with her mind, and he thinks she is "extra bright" for an Osage allottee.

It appears the applicant, Nellie White Winnett, has been examined by physicians who do not testify, but forward affidavits, or what were received in evidence as affidavits, but they are open letters not sworn to, directed "To whom it may concern," and these physicians write to the effect that Nellie White Winnett has "moderately advanced pulmonary tuberculosis, and should have sanitorium treatment, and this treatment will cost about $40 per week." The evidence discloses the alleged incompetent receives from the U. S. government, money at the rate of $77 per week, and this in addition to the rentals of her property.

One feature of this proceeding, impressive upon the court, is that the alleged incompetent has $20,000 restricted money to her credit with the U. S. government, which she cannot use until the restrictions are removed by act of Congress, or until a guardian is appointed, when the guardian may pay out, upon approval of the court, the full $20,000, if she sees fit to contract debts to that amount.

In her present status, she could only be imposed upon by artful and designing persons to the extent of her quarterly allowance from the government, and as this is not subject to garnishment and is paid to her direct, there is small chance of these artful and designing persons defrauding her of these sums, judging from the testimony in the case, and she has demonstrated that when it comes to trading land, it is the other fellow who needs a guardian, and not Nellie White Winnett, whereas, if a guardian is appointed, these same artful and designing persons may persuade her to contract debts to the full extent of her restricted money, and these debts will be promptly paid out of such restricted money by the guardian.

The guardian testifies that he allows his various wards $25 per week and pays their bills. That he is guardian for John Bighorse, and in three years of his guardianship he has drawn $10,000 per year, or a total of $30,000 out of the restricted monies of John Bighorse and paid his bills and built him a house with the same.

It is in evidence that the guardianship will cost the alleged incompetent approximately $600 per year, and while this court will not say that any "artful and designing person" desires the appointment of guardian for the purpose of making this $20,000 restricted money immediately available, this court is of the opinion that if the said Nellie White Winnett desires to go to New Mexico for her health, and as she has no business interests in Oklahoma save and except the renting of her farms, it would be more beneficial to the petitioner to place the renting of the farms in the hands of some reputable real estate dealer, and in addition to this, she has a husband whom she does not contemplate taking to New Mexico with her and has a son in school.

It is therefore the opinion of this court, after carefully examining the record and reading all the evidence, the same is wholly insufficient to prove Nellie White Winnett mentally incompetent to transact the ordinary business affairs of life, or liable to be imposed upon by artful and designing

persons, and the judgment of the trial court appointing a guardian should be reversed, and this cause remanded with instructions to the court below to vacate the order appointing Wm. Riber guardian of the person and estate of Nellie White Winnett, and to dismiss the petition praying for the appointment of such guardian.

By the Court: It is so ordered.

Note.—See under (1) 32 C. J. pp. 636, 637; anno. 23 L. R. A. 737, 26 L. R. A. (N. S.) 232; 23 A. L. R. 594. 14 R. C. L. pp. 570, 571; 5 R. C. L. Supp. p. 772. (2) 31 C. J. p. 532; 32 C. J. p. 637. (3) 28 C. J. p. 1082; 32 C. J. p. 661. (4) 32 C. J. pp. 631, 653. (5) 32 C. J. p. 631.