## MUDD v. PERRY et al.

Circuit Court of Appeals, Eighth Circuit.
February 21, 1928.

No. 7637.

1. **Courts** ⊕=284—**Federal court has jurisdiction of suit involving construction and application of federal statute; "arising under laws of United States."**

Where the principal issue in a suit involves the construction and application of a federal statute, it is one arising under a law of the United States of which a federal court has jurisdiction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arise—Arising.]

2. **Appeal and error** ⊕=161—**Party accepting part of property claimed by him and awarded by judgment is not estopped from appealing.**

A party, by accepting part of property claimed by him and awarded by judgment is not estopped to prosecute appeal.

3. **Indians** ⊕=28—**Action of county court of Oklahoma in probated estate of deceased Osage allottee is subject to law of state providing for appeals (Osage Act, § 3).**

By Act April 18, 1912, § 3, 37 Stat. 86, providing that property of deceased Osage allottees "shall in probate matters be subject to the jurisdiction of the county courts of the state of

Oklahoma," it was intended that such courts should exercise the general jurisdiction conferred by the laws of the state under which their decisions are reviewable on appeal.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit in equity by Alex Mudd against Samuel A. Perry and others. Decree for defendants, and complainant appeals. Affirmed.

For opinion, below, see 14 F.(2d) 430.

O. L. Rider, of Vinita, Okl. (John Barry and W. R. Bleakmore, both of Oklahoma City, Okl., on the brief), for appellant.

N. E. McNeill and Charles B. Rogers, both of Tulsa, Okl., for appellees.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

REEVES, District Judge. Appellant and appellees were plaintiff and defendants, respectively, in the trial court, and will be so styled in this opinion.

Plaintiff filed a bill in equity for the removal of a cloud upon the title to certain real estate claimed by him in the state of Oklahoma. For special relief pending the suit, he asked that the defendants be restrained from asserting title to said property.

There are no facts in controversy. When the issues were joined upon motion of the defendants, the trial court entered a decree upon the pleadings for them. The pleadings disclose that plaintiff belonged to the Osage Tribe of Indians, and that he was a brother of Lucy Lotson Perry, also a member of said tribe. Lucy Lotson Perry died about May 30, 1922, without issue and the only surviving blood relatives of said defendant were plaintiff and a niece, who was the daughter of a deceased brother.

The law of the state of Oklahoma controls the descent and distribution of the estates of deceased Osage Indians. Moreover, the Congress had provided "that the property of deceased * * * allottees of the Osage Tribe, * * * shall in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma." 37 Stat. 86.

The plaintiff and his niece, Maude Lee Mudd, on March 23, 1923, filed their petition in the county court of Craig county, Okl., wherein they prayed for distribution of the estate to them as the "sole legal heirs of the said decedent." Each claimed an undivided one-half interest therein.

On April 19, 1923, the defendant Samuel A. Perry appeared in court with a cross-petition, wherein he asked for distribution of an undivided one-half of said estate to him, upon the ground that he was the common-law husband of the deceased.

The county court disallowed the claim of Perry, whereupon he prosecuted an appeal to the district court. In the district court, Perry secured a reversal of the judgment of the county court, and obtained a recognition of his rights as the common-law husband of the said Lucy Lotson Perry. From the judgment of the district court, plaintiff and his niece prosecuted an appeal to the Supreme Court of Oklahoma. 108 Okl. 168, 235 P. 479. After the appeal was lodged in the Supreme Court, Maude Lee Mudd, the niece, procured an order from the court dismissing her appeal.

Upon a review of the case, the judgment of the district court was affirmed. The contention of the defendant Perry being sustained, he was awarded an undivided one-half interest in the estate of the decedent, including the real estate here involved. The court, however, awarded to plaintiff and his niece each an undivided one-fourth interest. The county court obeyed the mandate of the Supreme Court, and made distribution in accordance therewith.

The plaintiff has accepted and receipted for the part awarded to him by the final judgment of the Supreme Court. He still asserts, however, that instead of a one-fourth interest he is entitled to a one-half interest. The primary and main contention in this court is that the district court and Supreme Court never acquired jurisdiction of said cause on appeal, and in consequence the final judgment is a nullity and beclouds plaintiff's title.

The defendant Charles B. Rogers is an assignee of an interest in the estate from the defendant Perry.

The defendants challenge the jurisdiction of the federal court, but, even conceding such jurisdiction, they maintain the validity of the final state court judgment. These contentions will be noted and discussed.

[1] 1. At the threshold, it becomes the duty of the court to determine the question of jurisdiction. Concededly, there was not a diversity of citizenship. Plaintiff, however, asserts a federal question. The construction and application of section 3 of the Act of Congress, approved April 18, 1912 (37 Stat. 86), relating to the Osage Tribe of Indians, is brought in question. By this provision the county courts of the state of Oklahoma were granted jurisdiction "in probate matters" over the estates of deceased allottees of the Osage Tribe of Indians. In construing and applying the act, plaintiff contends the county courts became mere ministerial federal agents, and that their decisions became conclusive and final. This construction and application is challenged by the defendants. Therefore the decision of the case depends upon the construction and application of said statute. It becomes in that view a case arising under the laws of the United States (South Covington Ry. Co. v. Newport, 259 U. S. 97, 42 S. Ct. 418, 66 L. Ed. 842), and confers jurisdiction upon the federal court.

2. The defendants asserted in the trial court that the plaintiff had no right to maintain in the federal court an action to quiet title to land not in his possession. Such a right, it was admitted, is vouchsafed to the plaintiff under the laws of Oklahoma. An examination of the pleadings shows that it is not in fact an action to quiet title. This is conceded by the appellees. Moreover, the objection urged in the trial court is not pressed here, though noticed and discussed in the briefs. Both parties are out of possession as it appears from the pleadings, and the relief sought is injunctive, involving, among other things, the cancellation of the judgment affirmed by the Supreme Court of Oklahoma.

The rule of the federal court against the maintenance of an action to quiet title or for possession of real estate by a complainant out of possession against a defendant in possession is not applicable nor is it invoked.

The proceeding in the instant case, as stated, is not to quiet title or obtain possession, but its sole purpose is to secure an annulment of a judgment which it is claimed beclouds the title.

[2] 3. Because plaintiff accepted the award made to him under the mandate of the Supreme Court of Oklahoma, the defendants insist that his case should be dismissed. It is claimed that he is estopped to prosecute this action. The final judgment of the Oklahoma court gave plaintiff one-fourth of the estate, whereas he asserts title to one-half. Plaintiff has only received the uncontroverted part of his claim, and by the acceptance of such part he does not waive his right to prosecute his appeal as to the other one-fourth claimed by him. 2 R. C. L. 61–63.

[3] 4. This brings us to the chief point in controversy. The congressional act under observation provided that the property of the deceased allottees of the Osage Tribe of In-

dians "shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma." (37 Stat. 86.)

This was a devolution by the Congress of judicial authority upon the county courts of Oklahoma to determine judicially, among other things, who were rightful claimants to the estate of deceased allottees of the Osage Indian Tribe. It was more than a mere selection of the county court for the performance of a ministerial or executive duty. It involved, as Congress must have intended, a judicial inquiry. The county courts of Oklahoma were not designated as agents or final arbiters in such matters, but it was provided that such estates "shall, in probate matters, be subject to the jurisdiction of the county courts."

It was expressly held, in Levin v. United States (C. C. A.) 128 F. 826, in an opinion by Judge Sanborn of this circuit, that the Congress had authority under the Constitution to confer "judicial power upon other courts, or upon executives or other officers, in other cases, where, in its opinion, the devolution of such power is either necessary or convenient in the execution of the authority granted to the legislative or to the executive department of the government through the Constitution."

It is the law that the authority to hear and determine a cause includes jurisdiction to try and decide all the questions involved in the controversy. In re Antigo Screen Door Co. (C. C. A.) 123 F. 249; Shull v. Boyd, 251 Mo. 452, 158 S. W. 313.

Moreover, where jurisdiction over a new subject is conferred on a court of general jurisdiction, the jurisdiction conferred is to be exercised by it as such a court. 15 C. J. 815.

The Constitution of Oklahoma (article 7, § 13) confers probate jurisdiction upon the county courts of that state in the following language:

"The county court shall have the general jurisdiction of a probate court. * * * It shall * * * transact all business appertaining to the estates of deceased persons, * * * including the * * * *distribution of the estates thereof.*"

It will be observed that the Congress therefore conferred upon a court of general jurisdiction in probate matters a special jurisdiction over the estates of deceased allottees of the Osage Indians, with authority to exercise its general jurisdiction in such individual cases. The Constitution of Oklahoma (art. 7, § 16) further provided that, "in all cases arising under the probate jurisdiction

of the county court, appeals may be taken from the judgments of the county court to the district court of the county."

The principal function of an appellate tribunal is the exercise of supervision over the subordinate courts and the correction of errors which the latter courts have committed.

In caring for the estates of deceased Indian allottees, the Congress brought to its aid the judicial authority of the state of Oklahoma in probate matters. In determining the rights of claimants, the identical procedure would necessarily obtain as in all other estates within this jurisdiction. It cannot be maintained that the Congress intended that the decision of the county court in such Indian cases became conclusive and final without right of review. In conferring jurisdiction upon the county courts, it must have done so with the right of review appertaining to the judgments of those courts. Such has been the uniform construction placed upon the statute by the courts of Oklahoma. Plaintiff himself, in prosecuting an appeal from the decision of the district court to the Supreme Court of Oklahoma, thus construed the statute. All the decisions involving the construction of similar statutes are in harmony with this conclusion.

The decree of the trial court is correct, and should be affirmed. It is so ordered.