**MELLOTT, Gd'n, v. LAMBERT.**

No. 21176. Opinion Filed Jan. 24, 1933.

Welcome D. Pierson, for plaintiff in error.

L. M. Poe, E. J. Lundy, R. E. Morgan, and H. R. Duncan, for defendant in error.

BUSBY, J. This case involves an appeal from the decision of the district court of Osage county, restoring Jeanette Pappin Lambert, theretofore declared an incompetent, to competency. For convenience parties will be referred to as petitioner and respondent, as they were in the court below.

The evidence in the case is, in substance: That Jeanette Pappin Lambert was an Osage allottee of three-eighths degree Indian blood: that at the time of the trial she was 36 years of age; that she has the equivalent of a common school education; was in possession of all her mental faculties, and is not addicted to the use of alcoholics or narcotics; further, that she possessed a certificate of competency as an Osage Indian which was issued to her by the United States government when she became 21 years of age. She is the owner of one Osage headright, and inherited a fractional interest in another. She owned also, at the time of the trial, 160 acres of land on which there were two mortgages, and a house and lot in Pawhuska on which there were two mortgages. On the 23rd day of June, 1926, G. B. Mellott of Pawhuska was appointed by the county court of Osage county as her guardian. The evidence shows that she joined in the petition herself to have Mellott appointed. On June 6, 1920, she filed a petition in the county court of Osage county in her own behalf to have her competency restored. The county court denied this petition, and an appeal then was had to the district court of Osage county and a trial de novo had on September 19, 1929. At the conclusion of the trial, the trial judge made the following findings:

"Court: As has been stated, gentlemen, on two or three occasions during this trial, under my view of the law in such cases, there is just one thing for determination by this court, and that is, whether or not at the present time the applicant is or is not competent to transact her own business. A number of witnesses have testified in this case in behalf of the applicant that she is a person who is able to transact business—to handle her own affairs. These witnesses have no apparent reason for testifying as they did, except to tell the truth about the matter. On the other hand, there have been two witnesses testify that the applicant is not competent to handle her own affairs and those witnesses are interested to some extent—I do not mean to say by that that these witnesses have deliberately falsified, but, from their viewpoints and their transactions with the applicant, they have a different opinion than those other witnesses. There is not any doubt in my mind over the condition of this applicant as to one thing, that is, that she has been a spendthrift. When she made an application to the county court some three years ago for the appointment of a guardian, that is one of the reasons assigned in her petition that she come into this court — the same witnesses signed at that time—that she had been spending all her money—she might continue to do so if she were restored to competency, but I do not think that the fact that a person may be a spendthrift is ground to put such a person under guardianship. This is just another case—we have had many of them in this court—where the county court has been imposed on; they go into the county court, together with the relatives in this case, and make a showing down there, without any contradiction by anybody to the effect that they are an incompetent person. The county court, upon that hearing, adjudicates them as an incompetent person, and has a guardian appointed. They may become dissatisfied with the way the guardian administers the affairs, or for some other reason, Later on they come back and ask to be restored to competency. At that time there may not be any difference in their mental condition to what it was prior. but, at least there is a different kind of evidence offered. I have had witnesses that testified in the county court that they were incompetent. come into this court two years later and testify that they were com-

petent—the same witnesses. It depends on the way they look at it. But, undoubtedly, from this evidence, and from observation of this lady here, this person, with as much intelligence as the ordinary person. If she throws away her money that is her affair. She is not mentally deficient in any particular. I think she is competent, and the court will so find that she is competent to handle and care for her own affairs. That will be the finding of the court."

From this finding of the trial court, the journal entry of judgment was entered, restoring the petitioner to competency, and from this judgment an appeal was taken to this court.

Respondent urges four assignments of error:

(5) That the decision, judgment, order, and findings of the court below are not sustained by sufficient evidence.

(6) That the order, judgment, decision, and findings of the court below are contrary to law.

(9) Error of the court below in overruling the demurrer of the respondent and defendant to the evidence of the petitioner and plaintiff.

(12) Error of the court below in sustaining the petition of the plaintiff and petitioner to be restored to competency and overruling the protests and objections of the respondents and defendants to the granting of petition for restoration.

All of the foregoing assignments of error relate to the proposition that the judgment and findings of the trial court are not sustained by sufficient evidence and are contrary to law. These assignments will therefore be grouped under the sole proposition,

"That the judgment and findings of the trial court are not sustained by sufficient evidence and are contrary to law."

As we view it the sole question in this case is, Was the petitioner, Jeanette Pappin Lambert, a competent person, and entitled to be restored to competency on September 19, 1929?

The Supreme Court of Oklahoma, in the case of In re Winnett's Guardianship, 112 Okla. 43, 239 P. 603, held as follows:

"The application for the appointment of a guardian for an incompetent is a special proceeding, tried to the court, and on appeal the Supreme Court has power to, and will, review all evidence for the purpose of ascertaining whether there is sufficient competent evidence to sustain the judgment."

The converse of this would likewise be true.

Careful study of the evidence convinces us that the trial court did not err in restoring Jeanette Pappin Lambert to competency.

No contention was ever made that she was insane or mentally deficient, but merely that she was incapable of taking care of her business and of managing her property. The respondent, Mellott, with reference to her mentality, testified as follows:

"Q. You believe that she has just as much mentality as any other person, don't you? A. Why, I think so. Q. What? A. She has as much mentality. Yes. Q. Yes, sir; all her mental faculties are present? Aren't they? A. Well, I think so. * * *"

The trial court was able to observe the petitioner, Lambert, and take cognizance of her conduct on the witness stand and the way she answered interrogatories. At the conclusion of the testimony he said:

"But, undoubtedly, from this evidence, and from observation of this lady here, this petitioner here, she seems to be perfectly normal person, with as much intelligence as the ordinary person."

As counsel for petitioner points out in their brief, the two farms and the city property owned by her will doubtless be sold under foreclosure. This will leave her only her Osage headrights, which are inalienable. Her annuity payments from this source are made quarterly, and she will have little need for a guardian merely to collect these payments and deliver the same to her. Particularly so since these payments have been reduced to a small sum.

Counsel for respondent, Mellott, urges at length in his brief that the findings of the trial court are not sustained by sufficient evidence, and particularly in that there was not a sufficient showing as to a change in the mental condition between the time she was adjudged incompetent and the time of the trial in the district court wherein she was restored to competency.

Section 1452, C. O. S. 1921, prescribes the procedure to be followed to have one restored to competency. It says:

"* * * The petition shall be verified, and shall state that such person is then sane. * * * If it be found that the petitioner be of sound mind and capable of taking care of himself and his property, his restoration to capacity shall be adjudged, and the guardianship of such person, if such person be not a minor, shall cease."

The ultimate fact to be proven on a petition for restoration of competency is the mental soundness of the person who has before been adjudged incompetent. If the

trial court was right in its judgment, then of necessity there had been a recovery from the former condition. We believe the trial court was right in that conclusion.

In Chase v. Chase, 103 N. E. 857, the Supreme Court of Massachusetts said:

"Where a finding made for a petitioner by a single justice on appeal from a probate court decree discharging petitioner's wife as conservator of his estate was not plainly wrong, it could not be disturbed on appeal to the full court, especially where the petitioner appeared and testified before him."

Counsel for Mellott in his brief further argues at great length that Mellott should be permitted to retain the ward under guardianship for the purpose of protecting her from being imposed upon by artful or designing persons. There is no evidence that Jeanette Pappin Lambert was ever imposed upon by artful or designing persons. There was evidence that might tend to show that she had voluntarily spent money injudiciously and extravagantly. It was her right, however, to handle her business affairs in her own way and to spend her money as she chose, so long as this expenditure was not the result of some mental incapacity. As a member of the Osage Tribe, petitioner has been receiving a large yearly income which she did not have to earn by her own efforts. This might have developed a tendency in any person, either Indian or white, to spend money extravagantly. Her mere extravagance, however, if not caused by any mental incapacity would not entitle her to be held under the bondage of a guardian. Apparently, however, Mellott's greatest interest in the case is because of the fact that he made obligations for her in the purchase of a home and executed notes held by witness Stewart and that if petitioner is restored to competency he argued he would be personally liable on same. His counsel argues that it would be inequitable to release the ward because the guardian might have a personal liability for debt incurred by him, and that for this reason, if for no other, she should not be restored to her competency. Such a situation arose in a former case decided by this court in Re Guardianship of Revard. Revard v. Givens, 134 Okla. 202, 272 P. 480. This appeal was from the district court of Osage county, affected an Osage Indian, and the appeal was from the decision of the same trial judge who tried the case at bar. The trial judge there held that Mark Revard was mentally competent and should be restored to competency when all obligations made in his behalf by his guardian had been fully paid. The judgment restoring his competency was not to become effective, notwithstanding the finding of the court, until his personal obligations were paid. This court, in a decision of March 27, 1928, reversed the trial court and discussed this question at length. Inasmuch as that case presents almost the same state of facts and the same legal questions, we quote from the decision as follows:

"If the adult has been found sane and competent to take care of himself and his property, then there apparently would exist no further need or grounds for a guardian of such person. The statutes do not authorize or empower the appointment of a guardian merely because the individual may be negligent of his debts or heavily indebted, neither does section 1452, supra, or any other provision of statute, make it a condition precedent to the restoration and discharge from guardianship that the debts personally assumed or obligated by the guardian on behalf of the ward be paid. The present guardian in her answer says if the debts of the ward, which she has personally obligated herself to pay, be satisfied, then she is willing that petitioner be adjudged competent, and in her brief says it would be unjust, inequitable, and a fraud upon her, to discharge the ward without first requiring payment of the debts of the ward which she says she personally assumed under authority of the county court.

"The defendant, guardian, points to no provision of statute or law directing that a guardian shall become personally liable for the debts of the ward or his estate nor do we observe any order of court in this cause directing the guardian to personally assume or obligate herself for moneys borrowed on behalf of the ward or his estate. Even had the court so ordered, it would not be enforceable or valid unless within the power and authority of the court. Yawitz v. Hopkins, 70 Okla. 158, 174 P. 257; Cameron & Co. v. Garby, 71 Okla. 79, 175 P. 206; Gaines v. Montgomery, 82 Okla. 275, 200 P. 219.

"It appears in this case that the only income the ward has and the only property he possesses at this time is the yearly allowance paid him as a member of the Osage Tribe, and the right thereto as a member of such tribe. It may be difficult to collect any sums owing by the ward or his estate, but we see no legal reason or authority to retain guardianship over the ward and his estate by reason of such fact. If such were the rule the ward would likely remain a ward a long time, as his debts and obligations do not appear to have been greatly reduced during the period of guardianship. It was held in the case of Scheuer's Estate (Mont.) 79 P. 244, a case construing the provisions of a statute somewhat similar to section 1452, supra, of our statute, that the guardianship terminated ipso facto by an adjudication of restoration to capacity. No final account having been filed by the guardian, no issue thereon is before this

court The county court may hear and determine issues arising upon guardian's final account after guardianship is terminated.

"In the matter of settlement of a guardian's account, the guardianship may be terminated by the majority of the ward or otherwise, but the court has jurisdiction to require and enforce settlement of final account of the guardian." Howe v. Tarloshaw, 103 Okla. 269, 225 P. 983; Swift v. McKinney, 123 Okla. 1, 251 P. 734; In re Estate of Aubrey, 128 Okla. 79, 261 P. 192."

For the reasons herein stated, the judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, BAYLESS, and WELCH, JJ., concur. McNEILL, J., absent.