## STUART v. TAPP et al.

## TAPP et al. v. STUART.

### Nos. 1261, 1262.

Circuit Court of Appeals, Tenth Circuit.

Dec. 9, 1935.

Ralph A. Barney, of Pawhuska, Okl. (M. L. Holcombe, of Pawhuska, Okl., Clarence Lohman, of Houston, Tex., and Robert Stuart, of Pawhuska, Okl., on the briefs), for Stuart.

John M. Goldesberry, of Tulsa, Okl. (Gerald B. Klein and George W. Reed, Jr., both of Tulsa, Okl., on the briefs), for M. E. Tapp and others.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a suit in equity brought by Milford E. Tapp, surviving son, and Charles H. Tapp, surviving husband of Mary Belle Tapp against Charles F. Stuart for an accounting of moneys paid to him as special administrator and administrator with the will annexed of Mary Belle Tapp.

Mary Belle Tapp was an enrolled Osage allottee of one-sixteenth Indian blood and had a certificate of competency. Charles H. Tapp is not of Indian blood. Milford E. Tapp is an Osage Indian of one-thirty-second Indian blood. Mary Belle Tapp died testate, June 20, 1927. Thereafter, Stuart was appointed special administrator of her estate by the county court of Osage County, Oklahoma, and duly qualified as such.

The material portions of the will are set forth in the subjoined note.[1]

The will was duly approved by the Secretary of the Interior on July 30, 1928, subject to the right of the surviving husband to elect to take either under the will or under the statute of descent and distribution.

On September 25, 1928, the will was admitted to probate by the county court of Osage county, and Stuart was appointed by such court as administrator with the will annexed.

Charles H. Tapp elected to take under the statute and was entitled to a one-third interest in the estate of Mary Belle Tapp After the legacies were provided for, Milford E. Tapp was entitled to the remainder of such estate.

Mary Belle Tapp, at the time of her death owned 1⅛ Osage headrights and a bank deposit of $863.78.

From the date of the death of Mary Belle Tapp to May 21, 1934, inclusive, there was credited to her estate on account of accrued quarterly payments and interest on trust funds, the aggregate amount of $21,458.32.

From November 9, 1927, to September 26, 1928, inclusive there was paid to Stuart as such special administrator, by the Osage Indian Agency with the approval of the Secretary of the Interior, on account of family allowances to Milford E. Tapp, the aggregate sum of $2,400.

The following additional payments were made to Stuart as such special administrator by the Osage Indian Agency with the approval of the Secretary of the Interior:

January 19, 1928 for Crypt Mausoleum .................... $  500.00

February 14, 1928 for funeral expenses of Mary Belle Tapp.... 2,150.00

[1] First: I direct that my executrix, as soon as she may have sufficient funds in her hands, pay my funeral expenses and the expenses of my last illness.

Third: I give, bequeath and devise to my daughter, Minnie C. Bryant, the sum of One Thousand Five Hundred Dollars ($1,500.00), to be paid to her as the same may be available from the funds of my Estate, as the same may come into the hands of my Executrix, in quarterly payments of not to exceed Three Hundred Dollars ($300.00) each.

Fourth: I give, bequeath and devise to my son, James W. Chambers, of Rosswell, New Mexico, the sum of Fifteen Hundred Dollars ($1500.00) to be paid to him as the same may be available from the funds of my Estate as the same may come into the hands of my Executrix, in quarterly payments of not to exceed Three Hundred Dollars ($300.00) each.

Fifth: I give, bequeath and devise to my grandson, James Leon Chambers, of San Diego, California, the sum of One Thousand Dollars ($1,000.00), to be paid by my Executrix in quarterly installments to meet the premium on one certain life insurance policy in the New York Life Insurance Company; said payments to continue until said sum of One Thousand Dollars ($1,000.00) hereby devised has been exhausted.

Sixth: I give, bequeath and devise to Louis Paul Shotto, a grandson, the sum of Fifty Dollars ($50.00), this gift being a mark of my affection as he is otherwise provided for in his own Estate.

Seventh: I hereby give and devise and direct my Executrix to pay to my husband Charles H. Tapp, of Tulsa, Oklahoma, the sum of One Hundred Fifty Dollars ($150.00) per quarter for the period of his natural life, provided, however, that the said Charles H. Tapp shall at the time of my death be my legal husband, and not otherwise.

Eighth: All of the foregoing gifts, bequests and devises shall be payable only from such Estate as I may die possessed of, derived from oil land, and royalties heretofore allotted to me and shall not be derived from any estate, or property which I may derive or receive from the Estate of Adeline Kennedy Lockwood, my deceased mother.

Ninth: I give, bequeath and devise to Milford E. Tapp, my son, of Tulsa, Oklahoma, and to his issue, any and all interest I may die possessed of in the Estate of Adeline Kennedy Lockwood, my deceased mother, whether same be distributed or not, and also all the rest, residue and remainder of my Estate, both real, personal and mixed, owned by me at the time of my death; and I further provide and direct that commencing within three (3) months after my decease the said Milford E. Tapp shall be paid, have and receive the sum of Five Hundred Dollars ($500.00) per month quarterly.

Tenth: And I further direct that in the event of the death of the said Milford E. Tapp, without issue, that his bequest and devise, above provided for shall go to my grandson, James Leon Chambers.

Dated this 26th day of September, 1925.

There was paid to Stuart as administrator by the Osage Indian Agency with the approval of the Secretary of the Interior the following amounts:

October 30, 1928 to April 27, 1929 for family allowance to Milford E. Tapp................ $1,050.00

November 14, 1928, for court costs ...................... 42.05

April 23, 1929, for expenses of preparing income tax return.. 33.34

From May 11, 1929, to March 16, 1933, there was paid to Stuart as administrator by the Osage Indian Agency with the approval of the Secretary of the Interior, the aggregate sum of $13,095.08 without designation of the purpose for which it was to be used.

The payments to Stuart as special administrator aggregated $5050, and the payments to Stuart as administrator aggregated $14,220.47, a total of $19,270.47.

The bank deposit of $863.78 was received by Stuart, as administrator, on October 20, 1928. From the funds so received by him, Stuart as special administrator and administrator, under orders of the county court of Osage county, made disbursements in part as follows:[2]

In payment of funeral expenses and expenses of the last illness of Mary Belle Tapp .......... $2981.75

To the guardian of Milford E. Tapp for family allowances.... 5250.00

In payment of the specific legacies provided for in the will.. 4050.00

In payment of general claims allowed against the estate...... 8167.90

The trial court held that the quarterly payments which accrued to the credit of the 1⅓ headrights of Mary Belle Tapp subsequently to the quarter in which she died were payable directly to her heirs, and were not subject to the jurisdiction of the county court of Osage county.

It found that Stuart as special administrator and as administrator, received from funds which accrued to the credit of such 1⅓ headrights, subsequently to the death of Mary Belle Tapp, $19,270.47.

It found that Stuart was entitled to credit for the quarterly payment of $2,400, paid on September 10, 1927, for the quarter in which Mary Belle Tapp died; the amount disbursed in payment of specific legacies aggregating $4,050, and the amount disbursed for funeral expenses and expenses of last illness, aggregating $2,981.-75.

It concluded that after allowing such credits, Stuart was liable to account to Charles H. Tapp for $4,629.57, and to Milford E. Tapp for $5,209.15.

The court further found the supplemental answer set up that the following additional amounts were paid to, or in behalf of Milford E. Tapp to wit:

Groceries ..................... $ 109.75
Board and room................. 633.95
Storage and express ........... 31.75
Clothing ...................... 352.75
House rent .................... 96.00
Telephone ..................... 29.05
Laundry ....................... 14.00
Ice ........................... 18.65
Miscellaneous ................. 3.00
Allowance paid Milford E. Tapp 1391.50
Expense of guardianship ....... 250.00
Auto expense .................. 15.00

Total ................... $2945.40

It allowed credit therefor against the amount found to be due Milford E. Tapp.

It awarded judgment in favor of Charles H. Tapp for $4,629.57, and in favor of Milford E. Tapp for $2,263.75 and awarded interest on both sums from August 25, 1933, at six per cent. per annum. From this decree both plaintiffs and defendant have appealed.

In the case of Globe Indemnity Co. v. Bruce (C.C.A.10) 81 F.(2d) 143, decided the 9th day of December, 1935, we held, where an Osage Indian of less than one-half degree of Indian blood, having a certificate of competency died testate, the quarterly payments, which accrued to his headright after his death and pending administration and distribution of his estate, were payable to his personal representative. It follows that the trial court erred in holding that the quarterly payments which accrued after the death of Mary Belle Tapp, and pending the administration of her estate were not payable to Stuart as special administrator and administrator.

[2] It is impossible to determine from the record herein the exact amount of the disbursements made by Stuart as special administrator and as administrator, for court costs, attorney's fees, administrator's fees, taxes and miscellaneous expenses.

Furthermore, all of the payments made to Stuart prior to March 2, 1929, were for family allowances to Milford E. Tapp, expenses of the last illness and funeral expenses of Mary Belle Tapp, and costs of administration.

[2] Stuart paid the amounts received by him for the family allowances to the guardian of Milford E. Tapp under the direction and with the approval of the Osage Indian Agency. The effect was the same as if they had been directly paid to the guardian by the Osage Indian · Agency. Stuart was merely the conduit through which the funds passed. We fail to see any basis for charging him with the amounts received by him for family allowances, and by him paid to the guardian.

The Act of March 2, 1929, § 4, 45 Stat. 1478, 1480 provided:

"Upon the death of any Osage Indian of less than one-half of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the State of Oklahoma."

We held in Globe Indemnity Co. v. Bruce, supra, that under the above provision, upon the death of an Osage Indian of less than one-half Osage Indian blood or who at the time of his death had a certificate of competency, the moneys, funds and other property which had accrued to his credit at the time of his death and which accrued thereafter pending administration and distribution of his estate were payable to his personal representative.

■ It follows that the quarterly payments which accrued after March 2, 1929, were payable to Stuart as administrator, and the county court had jurisdiction over such funds when received by Stuart.

The orders of the county court of Osage county, directing the disbursement of such funds are not open to collateral attack. Doran v. Kennedy, 237 U.S. 362, 35 S.Ct. 615, 59 L.Ed. 996; Folk v. Monsell (C.C. A.10) 71 F.(2d) 816.

Furthermore under the construction of the Acts of Congress adopted by the trial court we think the decree was wrong.

■ The trial court found that Milford E. Tapp was entitled to receive $5,209.15 before allowing any credits for payments made to him or his guardian. The undisputed evidence is that Stuart as special administrator and administrator made payments to his guardian under the direction of the Osage Agency and the county court aggregating $5,250. Stuart was entitled to credit for the whole of such payments. They more than off-set the amount found to be due to Milford E. Tapp.

■ Charles H. Tapp was a white person and under no disability. The undisputed evidence is that Charles H. Tapp was present at the hearing held in the county court on the general claims filed against the estate; that the administrator went over and fully discussed each of the claims with Charles H. Tapp and that the latter, in open court, requested each of the claims be approved and paid. Under well settled principles of estoppel, Charles H. Tapp is now estopped to assert the claims were improperly paid, or to demand an accounting of the funds disbursed by the administrator in payment of such claims.

The decree is reversed, and the cause remanded with instructions to dismiss the bill.

BRATTON, Circuit Judge (specially concurring).

My views are stated briefly in a specially concurring opinion in the companion case of Globe Indemnity Co. v. Bruce (C. C.A.) 81 F.(2d) 143, this day decided. I concur in the reversal of this case for the reason there outlined.