## UNITED STATES v. CARSON et al.

District Court, N. D. Oklahoma.
June 21, 1937.

C. E. Bailey, U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl.

Ralph A. Barney, Pawhuska, Okl., for defendants.

FRANKLIN E. KENNAMER, District Judge.

This is an action by the United States against H. G. Carson, administrator of the estate of Walker Blaine, deceased, and the Maryland Casualty Company, surety on the bond of said administrator.

Walker Blaine was a full-blood member of the Osage Tribe of Indians, to whom a certificate of competency was never issued. Defendant Carson was appointed guardian of the person and estate of Blaine in 1918, by the county court of Osage county, and served as such guardian until the death of said ward on July 8, 1930. Twenty days later the same court appointed Carson administrator of the estate of his deceased ward. Carson made a final report as guardian which was approved by the county court, and also by the Superintendent of the Osage Agency, and the guardianship proceedings terminated on August 26, 1930. This approved report showed that the guardian held the sum of $7,266.90, in cash, and $47,005.00, in securities. These assets were delivered by Carson to himself as administrator of the estate of decedent, Blaine, and were the subject of the administration in the county court. The administration was closed September 6, 1932, and the county court allowed fees as administrator to Carson in the amount of $2,320.65, and also allowed him fees for the services of his attorneys during the administration proceeding, in the sum of $1,200. These allowed fees were paid by the administrator from the assets of the estate. The county court held that the funds received by Carson as administrator, from himself as guardian, were unrestricted. This decision of the court emanated from a hearing at which the Superintendent of the Osage Agency was represented by counsel, and an appeal was lodged in the state district court of Osage county by the Superintendent, from the ruling of the county court. This appeal was never prosecuted, being dismissed at the instance of the Superintendent. Almost two years later, and on August 13, 1934, the Secretary of Interior, acting presumably under the authority of section 4 of the Act of Congress of March 2, 1929, 45 Stat. 1478, 1480, undertook to fix the fees of Carson, as administrator, in the amount of $500, and the fees of his attorneys in the amount of $300.

By the present action the plaintiff seeks to recover from Carson and the surety on his bond as administrator, the excess of the fee allowances by the county court, over the allowances fixed by the action of the Secretary of Interior.

As the basis for recovery, the plaintiff contends that the funds in the hands of Carson, the guardian, upon the death of his ward, Blaine, should have been delivered to the Osage Agency as restricted funds, and should never have gone into the custody of Carson as administrator, and that the administrator was only entitled to such fees for himself and his attorneys as were approved by the Secretary of Interior, notwithstanding the allowances made by the county court.

It should be here observed that plaintiff concedes, by reason of Globe Indemnity Co. v. Bruce (C.C.A.) 81 F.(2d) 143, 151, there is no liability so far as the surety is concerned if the funds administered were restricted. Since there is nothing else in the case upon which to predicate a judgment against the surety, it necessarily follows that plaintiff cannot recover against the defendant Maryland Casualty Company.

As to the defendant Carson, however, the case presents more difficulty. The authority of the United States over the affairs of the Osage Tribe of Indians is unquestionably paramount, and to decide the instant case requires a consideration of the applicable congressional Legislation peculiar to the Osages.

Section 3 of the Act of Congress of April 18, 1912, 37 Stat. 86, provides as follows: "That the property of deceased * * * allottees of the Osage Tribe * * * shall, in probate matters, be subject to the jurisdiction of the county

courts of the State of Oklahoma." This section further requires that a copy of all papers filed in the county court in probate proceedings affecting Osages be served on the Superintendent of the Osage Agency at the time of filing, and authorizes the Superintendent to appear in the county court for the protection of the interests of these wards of the government. It also conferred on the Superintendent the power to investigate the conduct of executors and administrators, report any derelictions to the county court, and to prosecute any remedy, either civil or criminal, as the exigencies of the case and the preservation and protection of the interests of the allottees or their estates may require. By reason of this act, the Superintendent of the Osage Agency is a necessary party to all probate proceedings in the county courts of Oklahoma involving estates of Osages. In re Guardianship of Winnett, 112 Okl. 43, 239 P. 603.

Plaintiff asserts that the jurisdiction conferred on the county courts by the terms of the above-cited act of Congress is limited and restricted so far as the powers of the court to fix fees of administrators and their attorneys in case of the administration of the estate of a deceased Indian, having the status of Blaine, and where the assets of the estate have heretofore been subject to the supervision and control of the Secretary of Interior, by section 2 of the Act of February 27, 1925, 43 Stat. 1008, 1010, as amended by the Act of March 2, 1929, § 4, 45 Stat. 1478, 1480. The amended act reads as follows: "Upon the death of an Osage Indian of one-half or more Indian blood who does not have a certificate of competency, his or her moneys and funds and other property accrued and accruing to his or her credit and which have heretofore been subject to supervision as provided by law may be paid to the administrator or executor of the estate of such deceased Indian or direct to his heirs or devisees, or may be retained by the Secretary of the Interior in the discretion of the Secretary of the Interior, under regulations to be promulgated by him: Provided, That the Secretary of the Interior shall pay to administrators and executors of the estates of such deceased Osage Indians a sufficient amount of money out of such estates to pay all lawful indebtedness and costs and expenses of administration when approved by him; and,

out of the shares belonging to heirs or devisees, above referred to, he shall pay the costs and expenses of such heirs or devisees, including attorney fees, when approved by him, in the determination of heirs or contest of wills."

In effect, it is the position of the plaintiff that the assets of the Blaine estate were restricted and the county court was without jurisdiction to allow fees for the services of administrator and attorneys without the approval of the Secretary of Interior. No point is made, and none seriously could be, that the county court lacked jurisdiction to allow the fees in the amounts set by it, if the funds of the Blaine estate were unrestricted. Absent any question of restrictive funds, sections 1330 and 1332, O.S. 1931 (58 Okl.St. Ann. §§ 525, 527), gave the court ample authority to make the allowances. In support of its position Oklahoma cases of the type of Cowokochee v. Chapman, 90 Okl. 121, 215 P. 759, are cited. The opinion of the Oklahoma Supreme Court, in Re Thompson's Estate, 65 P.(2d) 442, 444, clearly holds that these cases have no application to the question of administration of estates of Osage Indians; they dealt with restricted allotments of deceased citizens of the Five Civilized Tribes which Congress had not subjected to the probate jurisdiction of the county courts. Hickey v. United States (C.C.A.) 64 F.(2d) 628, is also relied upon. It is not controlling because there the United States was suing a guardian under the provisions of the Act of Congress of February 27, 1925, supra, requiring delivery to the Superintendent of the Osage Agency of assets in the guardianship estate subject to supervision and control of the Secretary of Interior in case of the "death, resignation or removal" of the guardian. Here, Carson, as guardian had made a settlement approved by the Superintendent of the Osage Agency as hereinbefore recited, and received as administrator the guardianship assets, without departmental dissent, and apparently according to the administrative practices of the Department of Interior.

Discussing the Act of April 18, 1912, supra, the Tenth Circuit, in the case of Globe Indemnity Co. v. Bruce, supra, said:

"In Work v. United States ex rel. Lynn, 266 U.S. 161, 45 S.Ct. 39, 41, 69 L. Ed. 223, the court said that section 3, supra, 'expressly subjects to the jurisdiction of

the local county courts the estates of Osages who are deceased.'

"In Mudd v. Perry (C.C.A.8) 25 F.(2d) 85, 86, the court said:

" 'The congressional act under observation provided that the property of the deceased allottees of the Osage Tribe of Indians "shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma." (37 Stat. 86.)

" 'This was a devolution by the Congress of judicial authority upon the county courts of Oklahoma to determine judicially, among other things, who were rightful claimants to the estate of deceased allottees of the Osage Indian Tribe. It was more than a mere selection of the county court for the performance of a ministerial or executive duty. It involved, as Congress must have intended, a judicial inquiry. * * *

" 'Moreover, where jurisdiction over a new subject is conferred on a court of general jurisdiction, the jurisdiction conferred is to be exercised by it as such a court. 15 C.J. 815.

" 'The Constitution of Oklahoma (article 7, § 13) confers probate jurisdiction upon the county courts of that state in the following language: "The county court shall have the general jurisdiction of a probate court. * * * It shall * * * transact all business appertaining to the estates of deceased persons, * * * including the * * * distribution of the estates thereof." ' "

Furthermore, in that case as in the instant case, it was contended that the jurisdiction of the county court was a limited one. As stated by the court:

"The Globe Company, for the purposes of this case concedes that the county court erred in applying the accruals to this headright to the payment of general obligations. It stands upon the proposition that the headright and its accruals during the period of administration were within the jurisdiction of the county court, and any errors in the exercise of that jurisdiction must be corrected on appeal. The plaintiffs, on the other hand, concede that the county court has jurisdiction over accumulations to the headright during administration for the purpose of paying legacies, and jurisdiction over the accumulations during the quarter in which a decedent dies, for the purpose of paying certain debts. It has also been adjudicated (Mudd v. Perry [C.

C.A.8] 25 F.(2d) 85) that the county court has jurisdiction over all of the property of an Osage to determine 'who were rightful claimants to the estate of deceased allottees of the Osage Indian Tribe.' But, the plaintiffs assert, the jurisdiction is limited to these three purposes.

"It thus appears that the question precisely stated is a narrow one: Does the county court have jurisdiction over the headright and accumulations during administration subject to certain rules of law as to the proper exercise of that jurisdiction, or does it only have a jurisdiction over so much of the headright and accumulations as is necessary to pay legacies and certain debts? It is apparent at once that the practicable and workable rule is that contended for by the Globe Company. If the county court errs in the exercise of its jurisdiction, its orders are subject to appeal, and in a relatively short time, the rights of the parties can be definitely established. And by section 3 of the Act of April 18, 1912, 37 Stat. 86, officers of the government are given power to guard against an improper exercise of power by the county court with respect to Osage estates. Under the rule contended for by the plaintiffs, the correctness of the rulings of the county court can be contested in any court, and at any time subject only to the statute of limitations, with a result that property rights are unsettled for indefinite periods of time."

The Oklahoma case of In re Thompson's Estate, supra, also follows the Mudd v. Perry decision in holding that the county court has jurisdiction over all the property of an Osage to determine the heirs to whom the estate shall go. The following are pertinent extracts from the opinion:

"The fact that the deceased was a full-blood Osage Indian, owning restricted and debt exempt property, creates no doubt as to the jurisdiction of the county court of Osage county as a court of probate over the estate of the deceased, because Congress, by the Act of April 18, 1912 (37 Stat. 86), subjected such estates to the jurisdiction of the county courts of Oklahoma. * * *

"In view of the foregoing decisions, the county courts under the act of 1912 are left free to exercise the same jurisdiction and powers over the estates of deceased Osages as it may in the administration of the estates of the ordinary citizen under

the Constitution and laws of this state. See, also, Mudd v. Perry, 108 Okl. ·168, 235 P. 479.

"Under the act of 1912 the county court in the administration ·of estates of deceased 'Osages acts judicially as a court of probate and not as a federal administrative agency."

In the instant case, the United States, through the Superintendent of the Osage Agency, became a party to the administration of the estate of Blaine.' Appearance by counsel was made on behalf of the Superintendent. The county court decided that it had the right to administer upon the assets which the United States claimed were restricted and by its judgment pronounced such assets unrestricted. Perhaps this was an erroneous determination of the character of these assets, but the Superintendent of the Osage Agency had the right to appeal from such decision, and, indeed, undertook an appeal therefrom, but subsequently dismissed the appeal.

It would seem that under the rule clearly announced in Globe Indemnity Co. v. Bruce, and the authorities therein cited, the proper remedy for the United States wishing to correct the contended erroneous ruling was by the appeal as originally contemplated by the Superintendent. It would be a rather strained construction to hold that the County Court was without jurisdiction. The design of the remedial Acts of February 27, 1925, and March 2, 1929, relied upon by the plaintiff, was not to destroy the jurisdiction of the county courts, but simply to afford Indian estates in administration in said courts the protection and preservation to be secured by the presence of the government as a watchful party in every probate proceeding.

While the questions involved are difficult, I think the better reasoning impels a decision in favor of the defendant Carson, and that the county court of Osage county had jurisdiction to make the orders complained of in the administration of the Walker Blaine estate. The decision of the county court, however erroneous, having become a final judgment by reason of the failure to prosecute an appeal therefrom, will not now be disturbed. It is not subject to collateral attack. Globe Indemnity Co. v. Bruce, supra; Stuart v. Tapp (C.C. A.) 81 F.(2d) 155; Doran v. Kennedy, 237

U.S. 362, 35 S.Ct. 615, 59 L.Ed. 996; Folk v. Monsell (C.C.A.) 71 F.(2d) 816.

The defendants advance other reasons why the order of the Secretary of Interior, fixing the fees, should not be recognized. One is, that the fees were fixed arbitrarily and without giving either the administrator or the attorneys an opportunity to be heard. Another is, that the county court determined the fees on September 6, 1932, but the action of the Secretary was not taken until nearly two years thereafter, and that it would be unconscionable to call upon the administrator and his surety to return funds already disbursed under the order of the county court after such a long period. It is unnecessary, in view of the decision already made, to pass upon the merits of these propositions although they do appear to have weight in reason and justice.

As noted herein, upon the death of the restricted member of the Osage Tribe of Indians, restricted funds of such deceased Indian could have been disposed of in three different ways: First, to the Secretary of the Interior; second, to the administrator or executor of the estate; or, third, direct to the heirs or devisees. The congressional act confers authority upon the Secretary of the Interior to determine the manner of disposal. In the instant case, the Secretary permitted the funds to be paid to the executor. He could have required that the funds be returned to him, in which case it would have been necessary for the executor to have applied to the Secretary of the Interior for payment of fees. Since no funds were held by the Secretary from which the fees were to have been paid, it was proper for the executor to apply to the county court for his fees. The Secretary of the Interior had the right to object to the allowance of fees, or to the amount allowed, and, as heretofore pointed out, had a statutory right of appeal from any rulings with respect to the fees which he did not approve. It was incumbent upon the Secretary to have acted in behalf of the Indian heirs in hearings before the county court of Osage county. The Secretary had a right of appeal from any ruling the county court of Osage county might have made with respect to a determination of the status of the funds, whether restricted or unrestricted. As the funds were not held by the Secretary, and it was unnecessary to

apply to him for the payment of such fees, he was thus not empowered to reduce the fees. The only other authority he had was to appeal from the allowance made by the county court which he considered excessive or erroneous. Having abandoned his appeal, he cannot now complain, and the United States of America cannot now maintain this action.

Judgment may be entered for the defendants.