**WILLIAM CAMERON & CO., Inc., v. YARBY et al.**

No. 5048—Opinion Filed June 27 1916.

On Rehearing, Oct. 1, 1918.

(175 Pac. 206.)

1. **Guardian and Ward — Guardian's Contract—Validity—Authority of Court.**

A guardian, cannot make a contract which will bind the person or estate of his ward, unless authorized by a court of competent jurisdiction to enter into said agreement.

2. **Guardian and Ward — Expenditure of Money—Extent of Authority.**

Under an order of the court authorizing the guardian of a minor to expend a specified amount of money in making improvements on the real estate of the minor, the guardian could not make a contract which would bind his ward, or his ward's estate, for material furnished, and the ward could not be held liable at the instance of the party contracting with the guardian.

3. **Indians—Minor Ward—Receiver to Collect Rents—Act of Congress.**

A receiver cannot be appointed to collect the rents from the allotment of a full-blood Mississippi Choctaw Indian whose restrictions have not been removed, who has be-

come of age, and out of the rents pay a debt contracted by the guardian of said allottee, while she was a minor, for material used in making improvements on her allotment, by reason of section 15 of the Act of Congress approved July 1, 1902.

(Syllabus by Dudley, C.)

**Error** from District Court, Jefferson County; Frank M. Bailey, Judge.

Action by William Cameron & Company, Incorporated, against Nettie Yarby and others, and Mary Johnson and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Guy Green and Joseph T. Dillard, for plaintiff in error.

T. L. Wright, for defendants in error.

Opinion by DUDLEY, C. This case is a consolidation of the cases of William Cameron & Company, Inc. v. Nettie Yarby et al., and William Cameron & Company v. Mary Johnson et al., originally filed in the district court of Jefferson county, and consolidated in that court. These cases were brought for the recovery of sums of money alleged to be due plaintiff for lumber and material alleged to have been furnished Z. Brock, guardian of defendants, which is alleged to have been used for improvements on their land which was without improvements. Nettie Yarby and Mary Johnson were full-blood Mississippi Choctaw Indians, and the lands on which the improvements were alleged to have been made were their entire allotments. In October, 1906, Judge Dickerson, of the United States Court for the Southern District of the Indian Territory, at Ryan, made an order permitting said Z. Brock, as such guardian, to expend not to exceed $450 on the allotment of each minor. Plaintiff claimed to have furnished the lumber and material to make the improvements, and the guardian of said minors, on January 1, 1908, executed notes to plaintiff for the amount due, which were plain promissory notes, signed, Z. Brock, guardian of Nettie Yarby and Mary Johnson. The guardian failed to pay the notes in full, and, after the defendants became of age and were married, plaintiff brought action asking that the enhanced rental value, by reason of said improvements, be adjudicated; that a receiver be appointed, and such enhanced rental value to be impounded; and that plaintiff's account be paid therefrom. The case was tried by the court without a jury, and judgment rendered for defendant, from which judgment plaintiff in error prosecutes this proceeding in error.

There is no controversy as to the main facts, and there is but one proposition urged by the brief of plaintiff in error:

"That it was the duty of the trial court to find the difference between the rental value of the allotment before and after the improvements were made; appoint a receiver to take charge of the premises, with instructions to discharge plaintiff's claim out of the enhanced rental occasioned by said improvements, and so adjudicated by the court."

Plaintiff in error relies on the order made by Judge Dickerson permitting the guardian to expend not to exceed the sum of $450 for improvements on the land of each minor. It is a well-settled principle of law that a guardian cannot make a contract which will bind the person or estate of his ward, unless authorized by a court of competent jurisdiction. In the case of Joseph W. Fish v. Mary McCarty, 96 Cal. 484, 31 Pac. 529, 31 Am. Rep. 237, the Supreme Court of California said:

"The guardian of a minor cannot subject the estate and property of the ward to mechanic's lien arising from work done and materials furnished under a contract for the erection and repair of a building which is the property of the ward, without first obtaining an order of the court authorizing the guardian to make the contract."

In the case of Andrus v. Blazzard, 23 Utah, 233, 63 Pac. 888, 50 L. R. A. 354, the Supreme Court of Utah said:

"A guardian has no power to make a contract binding upon the ward or upon his estate, however beneficial to the ward the contract may be; and such contracts made by him impose a personal liability upon himself, and his protection from loss lies in his right to charge the expenditures to the ward's estate in his account."

The order made by Judge Dickerson permitting the guardian to expend a specific sum of money for improvements did not authorize the guardian to make a contract which would bind his ward or his ward's estate, for material furnished, which would hold the ward or his estate liable at the instance of the party with whom the guardian contracted. But the guardian was entitled to take credit in his accounts for what he actually disbursed in making improvements.

At the time this order was made, Oklahoma had not been admitted as a state. Mansfield's Digest of the General Laws of Arkansas was in force in the Indian Territory, and section 3500 of said Mansfield's Digest of the General Laws of Arkansas provides a way in which contracts in regard to wild and uncultivated land may be made, reading as follows:

"If any ward be the owner of wild or un-

improved lands not connected with any cultivated or improved tract belonging to such ward, the guardian may, under the advice and direction of the court, let out such unimproved lands, on improvement leases, not to extend more than two years beyond the majority of such ward."

This is the only provision for binding a ward's estate for improvements.

Further: These wards were both full-blood Mississippi Choctaw Indians, and the improvements were made on their entire allotments. Section 12, of the Act of Congress, entitled "An act to ratify and confirm an agreement with the Choctaw and Chickasaw Tribes of Indians, and for other purposes," approved July 1, 1902 (Act of July 1, 1902, c. 1362, 32 Stats. 642), makes inalienable during the lifetime of the allottee, not exceeding 21 years, the homestead allotment of any member of the Choctaw or Chickasaw Tribes of Indians, and section 16 of the same act provides that all land allotted to members of the same tribe, except such land as is set aside for homestead, as hereinafter provided, shall be alienable after issuance of patent, as follows:

"One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years, in each case, from date of patent."

Section 15 of the same act provides that lands allotted to members and freedmen shall not be affected or incumbered by deed, debt, or obligation of any character, contracted prior to the time at which said land may be alienated under this act, or said lands sold except as herein provided. and section 19 of the Act of April 26, 1906, c. 1876, 34 Stat. 144, provides:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole Tribes shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restrictions shall, prior to the expiration of said period, be removed by act of Congress."

It is admitted that the allotments of defendants in error are restricted, and we think that to allow the rent from restricted lands of full-blood Mississippi Choctaw Indians to be impounded for the purpose of paying a debt would be affecting this allotment by debt, or obligation, in direct violation of section 15 of the Choctaw-Chickasaw Supplemental Agreement.

We believe that proper judgment was rendered by the court below, and find no error in the record. It is recommended that the judgment of the trial court be affirmed.

By the Court: It is so ordered.

On Rehearing.

PER CURIAM. As ground for rehearing, plaintiff in error contends that the decision is in conflict with that in Muskogee Development Co. v. Green, 22 Okla. 237, 97 Pac. 619. The question decisive of this case is that to discharge plaintiff's claim out of the enhanced rental value occasioned by the improvements would in effect incumber the land with an obligation prohibited by acts of Congress: section 15, Act of Cong. approved July 1, 1902, 32 Stat. L. 642; section 19, Act of Cong. approved April 26, 1906, 34 Stat. L. 137. This question was not raised or considered in the opinion in Muskogee Development Co. v. Green; otherwise, a different conclusion would necessarily have been reached in that case.

The petition for rehearing is denied.

All the Justices concur.