This cause is brought to this court upon the appeal by the plaintiff in error, wherein she seeks to vacate and set aside certain allowances made to the defendant in error, as guardian of her estate, and to surcharge the guardian with certain sums of money, and for convenience the plaintiff in error will be designated as plaintiff and the guardian as defendant.
It appears from the record that one Steinhorst was formerly guardian of Alice H. Aubrey, plaintiff, and her brother, Herbert *Page 80 
Aubrey, and after his removal, the defendant, Henry De Lozier, was appointed guardian of the minors, and served in that capacity for about four years, and was allowed by the court, in the order of appointment, the sum of $60 per month from the estate of Alice Aubrey, and $40 per month from the estate of her brother, Herbert Aubrey, making a total of $100 per month defendant was to receive from the estate for his services as guardian.
No objection is made by plaintiff to the payment of the monthly allowance, but it appears from the record, the county court made additional allowances to the guardian as follows:
May 29, 1919, $600 for services in Supreme Court case No. 8583. January 24, 1920 $1,500 for his personal services in bringing and prosecuting a suit against Richard Steinhorst, the former guardian. January 24, 1920, $4,000 for attorneys' fees, Eugene B. Smith in prosecuting the Steinhorst suit. January 3, 1921, $1,200 for personal services in a suit against C. E. Roth; and on June 3, 1921, $500 for attorneys' fees for Eugene B. Smith for preparing, filing, and having approved the defendant's final report as guardian from March 10, 1917, until June 6, 1921, or about four years and three months, and filed eight reports including his final report of June 8, 1921, in which reports at various times he petitioned for and was allowed the extra compensation above set forth."
Upon filing of the final report, plaintiff filed her exception to the allowance of the sums hereinbefore set forth, and furthermore prays the guardian be charged with certain amounts for his failure to realize the amount of rentals from certain of the ward's property which he should have realized. In so far as the rentals are concerned, it appears defendant accounted for all money actually received as rentals, and although he might have obtained higher rentals, there is no showing of fraud, and if anything is shown, it is but a lack of business acumen, not amounting to fraud or gross mismanagement, and the judgment of the court as to those Items will not be disturbed.
Defendant contends that certain of these allowances having been made from time to time by the court, such orders were a final adjudication of the plaintiff's rights as to these items. With this contention we cannot agree. The allowances were made upon ex parte application and hearing and plaintiff was not notified and was not in position to object thereto until she attained her majority.
"The approval and settlement by the county court of annual account of a guardian is not final and conclusive upon the ward. Such approval and settlement of an annual account by the county court is only prima facie evidence of its correctness, and such account is subject to re-examination, upon the hearing of final account by such guardian." In re Cobb's Estate,66 Okla. 53, 166 P. 885; 12 R. C. L. 1154.
"Where exceptions are filed to the final report of a guardian; and the correctness of previous reports during the entire period of his guardianship are properly challenged, it becomes the duty of the county court to hear and determine the controversy thus raised, and render such judgment as the facts and circumstances justify." Tilman v. Tilman, 74 Okla. 259,177 P. 558.
The justice of and the reason for the rule thus laid down is manifest, and we are not inclined to depart therefrom, for the reasons as laid down in 12 Ruling Case Law, 1153, and cases there cited:
"The annual account is a part of the regular administration of the court, is intended to inform the judge and also interested parties of the status and general conduct of the guardianship, and is usually accepted and filed ex parte, and without a hearing. Besides, the ward, who is the party in advance interest, is legally and usually actually incapable of protecting his own interests, and the one whom the law charges with the duty of ascertaining and protecting his rights is in this matter the adverse party. It would therefore be grossly unjust to make the annual accounts conclusive against the ward, though they have been accepted by the court. They are prima facie evidence of the state of the account, but are subject to re-examination in settling later accounts.
"But the final account is very different. The ward is then of age, or represented by another guardian the account is passed upon after a formal hearing of which all interested parties have notice, and the final state of the account between the ward and his guardian is judicially determined. This is a judgment of the court which becomes res adjudicata, and can only be reopened on such proof of fraud or gross mistake as would justify opening any other judgment."
We will therefore consider the items of allowance in their order. The $600 allowance was made to the defendant for personal services rendered in case No. 8583 in this court. The evidence discloses that the action was filed before the defendant became guardian, and was pending in this court at the time of defendant's appointment, and awaited action by this court, and defendant rendered no services except to *Page 81 
consult the attorneys of record regarding a compromise, and this allowance cannot be affirmed by the court.
The second objection is to the allowance of $1,500 to theguardian for getting settlement out of the sureties on the bond of the former guardian, Steinhorst. It appears Eugene B. Smith, as attorney for the defendant guardian, filed suit against Steinhorst and a surety company, but did not join Benson and Bunting, the other sureties on the Steinhorst bond. Smith was employed by the guardian without any order or authority from the probate court. Smith afterwards entered the military services of the United States, and other attorneys were employed, who experienced much trouble in persuading the defendant, De Lozier, to permit them to file an amended petition joining Benson and Bunting, sureties, as defendants. This was finally accomplished, however, and judgment was obtained and settlement had. The defendant was allowed $1,500 for personal services, and the record discloses he performed no services in the case, except to confer with the attorneys, and it would appear from the record the defendant was more interested in preventing the sureties, Benson and Bunting, from being sued than he was in protecting his ward's interests, and his influence was more of a detriment than otherwise, and his claim for $1,500 was wholly without merit and cannot be allowed.
The next objection is to the allowance of $1,200 to the defendant in what is designated as the "Roth Case." It appears from the record, defendant was very anxious to have this case compromised before his ward reached her majority, when she might handle her own affairs or employ her own counsel. It was compromised just before the ward reached her majority, the sum of $20,000 being realized, out of which it appears the attorneys received $8,000 as a fee, and the defendant wants $1,200, or 10 per cent. of the residue, and the only service he rendered in the case, according to his own testimony, was to come from Sapulpa to Oklahoma City several times, and in reading his testimony this court knows the errand upon which he alleges he came was worthless and fruitless, and lays the defendant open to severe censure and condemnation by this court by reason of the implications therein contained, and this item therefore is disallowed.
The next item objected to is an allowance of $4,000 to attorney Smith for services in the case against Steinhorst, the former guardian, in which action the defendant had received $1,500 for personal services, over and above its monthly allowance. The defendant had no authority to employ attorneys in this case. It appears from the record Smith refused to join Benson and Bunting, sureties on the Steinhorst bond, and after Smith went into the military service, other attorneys were employed and paid out of the estate. These attorneys joined all sureties in an amended petition, and after Smith's return from the U.S. service, the case was settled, and the records show Smith received $1,000 from Herbert Aubrey's interest, and if a like sum of $1,000 from Alice Aubrey's interest had been allowed, we think he would be reasonably compensated for all legal services performed, and this item of $4,000 will be disallowed in part, and the sum reduced to $1,000 to be paid from Alice Aubrey's interest to the attorney, Eugene B. Smith.
The next item objected to is the allowance of $500 to pay Smith to draw up the guardian's final report. Smith, it appears from the record, was drawing $25 per month from the Alice Aubrey interest in the estate, and while the record is not clear on the point, the inference is he was drawing a like amount from the Herbert Aubrey interest; was collecting the rents, paying taxes and interest on mortgages, and doing those things it was the duty of the defendant as guardian to do, and for which he was being paid the sum of $100 per month. It was the clear duty of the guardian to file his final report, and if he required the services of an attorney to prepare the same, it became his plain duty to obtain an order of the court authorizing the employment of counsel before incurring this indebtedness, which he failed to do, and for the reason stated, this item should be disallowed.
There is no statutory authority for a guardian to employ an attorney, and his act in so doing must be authorized by the county court under its constitutional power to "transact all business appertaining to the estates of deceased persons, minors," etc. Const., art. 7, sec. 13. The only statutory authority of the guardian for incurring liabilities against the estate of his ward, is that incident to maintenance, support, and education, and by statute he is required to be frugal even in these matters. Comp. Stat. 1921, sections 1455, 1456. As was said by this court in Lee v. Tonsor et al., 62 Okla. 14,161 P. 804:
"The guardian had no power to bind the estate of his wards in any manner, or to create a lien thereon without specific authority from the county court so to do." *Page 82 
The final report of the defendant as guardian discloses he received for the plaintiff, Alice H. Aubrey, $71,335.42. Total amount paid out, $60,891.18. Balance due ward, $10,444.24.
In the amounts paid out there appears a total of $5,494 paid the ward for her maintenance, making a total of $15,938.25 received by the plaintiff, while the record discloses the defendant received $6,950 from the Alice Aubrey interest, and approximately the same from the Herbert Aubrey interest, or a total of approximately $13,000, and all this time the guardian was drawing his regular salary as an employee of a railroad company in the live stock department, and was not devoting his time to the interests of his wards. The record further discloses that the guardian and the attorneys received $23,126.52 from the Alice Aubrey interests, as against her $15,908.25, and from the record we gather that a sum approximately the former amount has been paid to the guardian and attorneys from the Herbert Aubrey interest, but as the record is silent as to whether or not Herbert Aubrey has yet attained his majority and is in a position to protect his interests, this angle of the case will not be discussed in this opinion. Suffice it to say, the charges herein made are sufficient to shock the conscience of the court.
Some protection must be given to helpless minors in this state, and a deaf ear will never be turned to their cries of distress and supplications for justice when called to the attention of this court on proper proceedings, and in an action of this nature, it is the duty of this court to, and this court will examine the whole record and render such judgment as should have been rendered in the court below. Cash v. Thomas,62 Okla. 21, 161 P. 220; Britton v. Morris, 59 Okla. 162,158 P. 358; Coley v. Dore, 56 Okla. 443, 156 P. 164; Mitchell v. Leonard, 55 Okla. 626, 135 P. 696; Hawkins v. Boynton Land, Mining Investment Co., 59 Okla. 30, 157 P. 753; Clayton v. Oberlander, 59 Okla. 35, 157 P. 929; Pyeatt v. Estus, 72 Okla. 160; 179 P. 42; Swan v. O'Bar, 66 Okla. 91,167 P. 470; Prentice v. Freeman, 76 Okla. 260, 185 P. 87.
For the reasons herein stated, the judgment of the court below should be reversed and the cause remanded to the trial court, with instructions to disallow the item of $600 asked by the guardian in case No. 8583, then pending in this court, to disallow the item of $1,500 to the guardian in the case against the former guardian, Steinhorst, to disallow the $1,200 heretofore awarded the guardian in the C. E. Roth Case, to disallow the item of $500 requested for the payment of the attorney for drawing and filing the final report of the guardian, De Lozier, and to reduce the item of $4,000 requested as attorneys' fees in the Steinhorst Case, to $1,000, to be paid out of the Alice Aubrey interest, and to surcharge the defendant. Henry De Lozier, as guardian, in his final report, with the sum of $6,800, being the difference between the amount awarded by this court and the judgment of the trial court.
By the Court: It is so ordered.