2012 OK 8

In the Matter of the GUARDIANSHIP
OF Tracy Delbert STANFIELD.

Loyde H. Warren, Appellant,

v.

Mildred Stanfield, Guardian of the Estate
of Tracy Delbert Stanfield, Appellee.

No. 107,292.

Supreme Court of Oklahoma.

Feb. 7, 2012.

Ronald A. Schaulat, Oklahoma City, Oklahoma, for Appellant.

Jerry Colclazier, Colclazier & Associates, Seminole, Oklahoma, for Appellee.

EDMONDSON, J.

¶ 1 The issues before us are: (1) Does a District Court in a guardianship proceeding have jurisdiction to approve a contingent fee agreement made by a guardian on behalf of a ward; (2) May a court in a guardianship proceeding decline to approve a contingent fee agreement for payment of a lawyer's services provided to the ward *merely* because payments pursuant to that agreement were made prior to court approval being sought; and (3) May a court in an open and continuing guardianship proceeding deny a motion to approve a contingent fee contract *merely* because of the length of time between creation of the contract and seeking court approval. We answer the first question in the affirmative and the second two in the negative.

¶ 2 Tracy Stanfield was injured in 1992. A settlement relating to his injuries resulted in an annuity providing periodic payments to Stanfield from Metropolitan Life Insurance Company (MetLife). In 1996, Stanfield assigned certain annuity payments, and the assignee in turn assigned them to J.G. Wentworth S.S.C. Limited Partnership (Wentworth). In 1998, Stanfield caused MetLife to ignore the assignments to Wentworth.

¶ 3 Wentworth responded by filing an action in a Pennsylvania state court, and in May 1998 obtained a judgment against Stanfield for $572,747.05. Wentworth then filed a motion for a judgment against garnishee MetLife for the same amount. The Court of Common Pleas, Philadelphia County, granted the motion in September 1998.

¶ 4 Stanfield's mother, Mildred Stanfield, filed a petition in the District Court of Seminole County, Oklahoma, to be appointed guardian of her son's estate. She was appointed guardian in March 1999. In March 2001, MetLife filed an interpleader action in the United States District Court for the Eastern District of Pennsylvania and named as defendants Wentworth and Mildred Stanfield in her capacity as guardian of her son's estate. Mildred Stanfield asked Loyde Warren to accept service of process on her behalf, and he agreed. The judge in the federal case ordered a settlement conference. In May 2001, Stanfield signed Warren's contingency fee agreement that provided a legal fee of 33% of the gross recovery after legal costs were deducted, and if a hearing or trial was necessary, a fee of 40% of the gross recovery after legal costs were deducted.[1]

---

1. Stanfield argues in her brief that the federal judge ordered a settlement conference three days prior to Warren's request for her to sign a contingency fee agreement. Warren argues that he and Stanfield discussed a contingency agreement prior to issuance of order for a settlement conference.

¶ 5 Warren engaged local counsel in Pennsylvania.[2] That lawyer filed an answer in the federal case. At the settlement conference the parties agreed that Wentworth's judgment for $572,747.05 would be withdrawn; payment of $154,279.73 would be paid from Stanfield's annuity payments to Wentworth; the annuity assignment was rescinded; and future annuity payments from MetLife to Stanfield, as guardian, would be made payable in care of Warren. In September 2001, a consent order and settlement agreement was filed in the federal case. In 2005, Stanfield (or Guardian) obtained new counsel. Appellate briefs *by both parties* agree that in the District Court of Oklahoma County an action was filed against Warren relating to his representation of the ward;[3] however, none of the filings in that case are part of the certified appellate record before us.[4]

¶ 6 In 2009, Warren filed a motion in the open and continuing guardianship case before the District Court of Seminole County for court approval of both the 2001 contract for legal representation and the payment of legal fees made pursuant to that contract. Guardian objected and argued that: (1) A contingency fee for successfully defending a client from a judgment was improper, and Warren's motion in this case was similar to a lawyer obtaining a contingency fee for successfully defending a client in a residential mortgage foreclosure proceeding and requesting 40% of the residence as a fee; (2) Guardian had been paying Warren based upon an hourly billing method, and Warren had improperly induced Guardian to sign the contingency fee agreement; (3) The fee agreement was unenforceable because it had not been approved by the guardianship court; and (4) The motion should be denied because of breach of contract, fraud, breach of a fiduciary duty, and negligence.

¶ 7 The District Court stated, "Because the application was not filed prior to payment of the fee and was not filed until nearly eight years after the contract was executed, the Court DENIES the Application." Warren appealed. The Court of Civil Appeals agreed with the District Court that Warren's request for approval of attorney fees was properly denied. The appellate court also stated that Warren could be entitled to legal fees if he showed that his services were necessary for the protection of the Ward's estate, the services were beneficial to the estate, and that the amount sought was reasonable, reflecting the trial court's statement in its order that Warren was entitled to "reasonable compensation."

¶ 8 Warren petitioned for certiorari, which we granted.[5] Warren argues that a

2. There is a factual dispute between the parties on when Pennsylvania counsel was engaged.

3. An admission in a brief may supplement an appellate record. *Woods v. Prestwick House, Inc.*, 2011 OK 9, n. 16, 247 P.3d 1183, 1188; *Powers v. District Court of Tulsa County*, 2009 OK 91, n. 20, 227 P.3d 1060, 1069.

4. The only material purportedly from the Oklahoma County District Court case is Warren's "Exhibit T" (O.R. at 87), attached to his motion for approval of the contingent fee agreement. Exhibit "T" is a photocopy of an affidavit by lawyer J.D. concerning the nature of the work performed by Warren for the estate of the ward. The photocopy has an Oklahoma County case caption, but is not certified or file-stamped by the clerk of that court.

5. During the appellate briefing cycle, Stanfield requested leave to expand the record on appeal to include additional filings from the guardianship case before the District Court of Seminole County. Since we vacate the opinion of the Court of Civil Appeals; we also address that request.

On the same day that Stanfield filed her appellate brief in this Court she filed an application to file a "Supplemental Designation of Record or Submit Omitted Pleadings." The opinion of the Court of Civil Appeals denied the application. The record on appeal contains no counter designation of record. Stanfield's application was untimely in that it was made four months after the last date a counter designation could be timely filed in the District Court. Okla.Sup.Ct.R. 1.28(c). Further, the application was made more than three months after Notice of Completion of Record was filed in this Court and the parties were notified. See Okla.Sup.Ct.R. 1.34(h). Submitting pleadings directly to this Court is an improper method for creating an appellate record when the pleadings are unrelated to this Court's cognizance or its capacity to administer effective relief. *State v. Torres*, 2004 OK 12, nn. 14 & 16, 87 P.3d 572, 578, 579. An appellee may file a "Supplement to Record on Accelerated Appeal" (Okla.Sup.Ct.R. 1.36(d)), but this proceeding is not a Rule 1.36 appeal. Stanfield's application to expand the record on appeal is denied.

contingent fee agreement may be approved by the probate court after payment of the fee. He states that the contingent fee contract would have been approved by a court in 2001, and so a court should approve it now. He argues that the particular circumstances of his employment should be considered to create an exception to statutory language requiring court approval prior to payment. He also argues that 30 O.S. § 4–403(D) "exempts contingency fee contracts from the Guardianship Act," and that court approval is not required as a condition to enforce the fee agreement.

¶ 9 In a *guardianship proceeding* the procedure for payment of compensation to attorneys, guardians ad litem, and persons conducting evaluations is provided by a statute, 30 O.S.2001 § 4–403, which states:

A. 1. An attorney, other than a public defender, for a ward or a subject of a proceeding pursuant to the Oklahoma Guardianship and Conservatorship Act or whose services are obtained by a guardian on behalf of a ward is entitled to reasonable compensation to be paid from and as a charge against the estate of the ward. Reasonable compensation for attorney services rendered and expenses made on behalf of the guardian of the ward incurred prior to the appointment of the guardian may be paid from and charged against the estate of the ward, as approved by the court prior to payment.

2. Guardians ad litem, other than an employee of a public agency or an employee of a private agency which provides such service pursuant to a contract with a public agency, appointed pursuant to the provisions of this act are entitled to reasonable compensation.

3. A person conducting an evaluation of the subject of the proceeding, whose services resulted in the appointment of a limited guardian or guardian or other order beneficial to the subject of the proceeding, is entitled to reasonable and necessary compensation.

B. 1. Compensation and reimbursements pursuant to this section shall be paid from the financial resources of the subject of the proceeding unless the court determines that such payment of compensation and reimbursements would:

a. substantially impede the partially incapacitated or incapacitated person from meeting the essential requirements for his physical health or safety, and

b. substantially impair the financial resources of such person, or substantially impede his ability to obtain the services necessary for developing or regaining his abilities to the maximum extent possible.

2. If not otherwise compensated or reimbursed pursuant to the provisions of paragraph 1 of this subsection:

a. any attorney or guardian ad litem appointed by the court who is entitled to compensation shall be compensated from the court fund of the court having jurisdiction,

b. the cost of services provided by a person conducting an evaluation, when such person is the employee of a public agency or the employee of a private agency which provides such services for guardianship proceedings pursuant to an agreement with a public agency, shall be borne by the public agency, or by the private agency in accordance with the terms of such agreement, and

c. if the person conducting an evaluation is a private individual or agency and the cost of the services provided is not otherwise compensable under a state or federal public assistance program, compensation for the cost of services shall be from the court fund of the court having jurisdiction.

3. Compensation or reimbursement from the court fund for attorneys and guardian ad litem pursuant to the provisions of this subsection shall be in accordance with the provisions of Section 1304 of Title 20 of the Oklahoma Statutes.

C. All compensation and reimbursements pursuant to the provisions of this section shall be approved by the court prior to payment.

D. Contingent fees and contracts for recovery of property agreed upon and approved by courts or the ranking official representing the Secretary of the Interior in Oklahoma, who has supervision of any

restricted Indian tribe in this state do not come within the provisions of the Oklahoma Guardianship and Conservatorship Act.

¶ 10 Warren argues that § 4–403(D) exempts contingent fee contracts from the provisions of the Oklahoma Guardianship and Conservatorship Act (Guardianship Act), and that his particular fee agreement is a contingent fee contract not subject to the Act. The essence of this argument is that either (1) there exists an interdocket remedial boundary prohibiting court approval of a contingent fee contract within the procedural framework of a guardianship,[6] or (2) that paragraph "D" must be read *as a prohibition for court approval of such contracts in any type of proceeding.* Because the parties frame one issue in terms whether a contingent fee contract is subject to the authority and jurisdiction of a guardianship court, we address the first issue in that context.

## I. Jurisdiction of a Guardianship Court to Approve a Contingent Fee Agreement Involving the Interests of a Ward

■ ¶ 11 When determining the meaning of an unambiguous statute, the ordinary rules of grammar must be applied unless they lead to an absurd result.[7] The plain grammatical meaning of the phrase "[c]ontingent fees and contracts for recovery of property agreed upon and approved by courts" is

that contingent fees *and* contracts for the recovery of property are agreements that must be approved by a court (or the ranking official representing the Secretary of the Interior in Oklahoma, who has supervision of any restricted Indian tribe) as a condition for such agreements to not come within the substantive and procedural provisions of the Oklahoma Guardianship and Conservatorship Act. The opinions of this Court that predate the creation of § 4–403 combined with more recent opinions support this conclusion.

¶ 12 Language in § 4–403 was different when it was enacted in 1924. The 1924 version of the statute expressly stated amounts for the maximum attorney's fees to be paid from a ward's estate based upon the size of the estate. Further, it provided specific exceptions for deviating from those stated amounts: payment of fees for court proceedings and litigation, contingent fee contracts, and contracts for recovery of property. The 1924 statute, like the current version, provided for court approval, or approval by the Secretary of the Interior, or the representative for the Secretary when contingent fee agreements or contracts for recovery of property were involved.[8]

¶ 13 Prior to the 1924 enactment of language which became current § 4–403(D), our opinions explained that: (1) A guardian had a duty to employ counsel to recover property of the ward held by another;[9] (2) A guard-

---

6. For an example of a discussion of an interdocket boundary see *Williams v. Mulvihill*, 1993 OK 5, nn. 14, 19 & 24, 846 P.2d 1097, and the explanation of an extra-probate issue not litigated within probate's restrictive statutory remedial range because it was beyond the interdocket boundary that separated the various remedial tracks within a District Court's cognizance. *Cf. Prickett v. Moore*, 1984 OK 54, 684 P.2d 1191, (additional proceedings were required *in a guardianship* prior to "commencement of another suit for partition;" *i.e.,* the complete relief sought required two proceedings).

7. *Gilbert Central Corporation v. State*, 1986 OK 6, 716 P.2d 654, 658.

8. 1923–24 Okla. Sess. Laws. Ch. 84 § 5 (Approved March 21, 1924):

Section 5. The maximum which can be allowed for attorneys fees out of any estate of a minor or an incompetent for anything except for services rendered in court proceedings and litigation in court, shall not exceed Fifty ($50.00) dollars per month, where the value of the estate does not exceed the sum of Fifty Thousand ($50,-

000.00) dollars; and not more than Seventy–Five ($75.00) dollars, per month, where the value of the estate is between Fifty Thousand ($50,000.00) dollars, and Seventy-five ($75,000.00) dollars; and where an estate exceeds Seventy-five Thousand ($75,000.00) dollars in value, the Court may allow a fee of not to exceed One hundred ($100.00) dollars, per month. Provided, that contingent fees or contract for recovery of property agreed upon and approved by courts or the ranking official representing the Secretary of the Interior in Oklahoma, who has supervision of any restricted Indian tribe in this State do not come within the provisions of this Act.

9. *Cotner v. Lon Jacobs Grocery Co.*, 1921 OK 377, 84 Okla. 1, 202 P. 997, 1000.

However, we also explained that a minor was generally not bound by a contract to pay for legal services except when the payment was related for services in connection with the minor's *personal* relief, protection, or liberty; *and we held that legal services rendered to a minor in regard to ordinary rights of property were not of this category, i.e., they were not "necessaries."* Grissom v.

ian's payment of an attorney's fee from the property of a ward could be successfully challenged and disallowed at the time of the final accounting when court approval of the fee had not been previously obtained or the services were not beneficial to the estate; [10] (3) A guardian's payment of an attorney's fee from the property of a ward could *not* be successfully challenged at the time of the final accounting if court approval of the fee had been previously obtained from the court in a non-*ex parte* procedure; [11] (4) An action at law could not be maintained against a minor by an attorney to recover fees for legal services rendered the estate of the minor without specific authorization of the probate court prior to the rendition of such services, or by an express allowance therefor by the court after the same were rendered; [12] (5) A guardian's payment of an attorney's fee without approval of the court could result in a surcharge against the account of the guard-

ian; [13] (6) At the hearing on a final report and accounting the amount to be paid a lawyer for legal services could be completely disallowed although granted by a previous *ex parte* order, and a legal fee for court-authorized legal services could be reduced to a reasonable amount; [14] and (7) We followed the general principle that the only statutory authority of the guardian for incurring liabilities against the estate of the ward was that incident to maintenance, support, and education of the ward, and a guardian had no power to bind the estate of the ward "in any manner or to create a lien thereon without specific authority from the county court so to do." [15] In *Mason v. Ford,* 1924 OK 504, 102 Okla. 257, 226 P. 346, the Court stated that a special order of a guardianship court ordering the payment of an attorney's fee was not subject to attack in a final settlement of the ward's estate. In 1935, the Court explained that this principle in *Mason* and similar opin-

*Beidleman,* 1912 OK 847, 35 Okla. 343, 129 P. 853, 855. *Grissom* stated that expenses for *necessaries* concern the person and not the estate of the ward. *Id.* 129 P. at 854–855. *See also Watts v. Houston,* 1917 OK 231, 65 Okla. 151, 165 P. 128. In *Matter of Bradshaw's Estate,* 1980 OK 17, 606 P.2d 578, 581–582 we relied upon *Watts v. Houston, supra,* which made a distinction between legal services for "necessaries" and services beneficial to an estate or property of a ward, and we stated that the public policy behind this distinction "is equally applicable to incompetents as to minors."

10. *In re Talomase's Estate,* 1924 OK 375, 98 Okla. 212, 225 P. 156, 159 (If the legal services were not necessary to preserve the estate of the ward, were of no benefit thereto, and not supported by sufficient evidence; then the legal fees were not allowable.); *Parnell v. Wadlington,* 1913 OK 746, 42 Okla. 363, 139 P. 121 (A guardian had authority to bind the estate of a minor to pay legal fees, with approval of the proper court, when the legal services were necessary and beneficial to the estate.); *William Cameron & Co. v. Yarby,* 1916 OK 713, 71 Okla. 79, 175 P. 206, 207 (In a controversy determined by the inalienability of an allotment, we noted the "well-settled principle" that "a guardian cannot make a contract that will bind the person or estate of his ward, unless authorized by a court of competent jurisdiction.").

11. *Mason v. Ford,* 1924 OK 504, 102 Okla. 257, 226 P. 346, 348 (A special order of a guardianship court ordering the payment of an attorney's fee was not subject to attack in a final settlement of the ward's estate.); *Aubrey's Estate v. De Lozier,* 1927 OK 7, 128 Okla. 79, 261 P. 192, 193–194 (A special order of a guardianship court for pay-

ment of legal fees could be examined at a subsequent final accounting when the special order was the result of an *ex parte* application and hearing.).

12. *Watts v. Houston,* 1917 OK 231, 65 Okla. 151, 165 P. 128.

13. *In re Myers' Estate,* 1923 OK 874, 93 Okla. 143, 219 P. 943 (rule stated in an opinion which explained that a guardian's payment of a legal fee without prior court approval was made at the guardian's peril, and this Court affirmed an order surcharging the guardian's account for the payment made for a legal fee).

14. In *Aubrey's Estate v. De Lozier,* 1927 OK 7, 128 Okla. 79, 261 P. 192, 194–195, a controversy that arose prior to the effective date of the statute but reported after its effective date, we disallowed a $500.00 fee paid for legal services in preparing the final account, and reduced a $4,000.00 legal fee to an amount that was reasonable for payment of the litigation services provided.

15. *Aubrey's Estate v. De Lozier,* 1927 OK 7, 128 Okla. 79, 261 P. 192, 195, quoting *Lee v. Tonsor,* 1916 OK 998, 62 Okla. 14, 161 P. 804, 806. *See also First Nat. Bank & Trust Co. of Tulsa v. Bassett,* 1938 OK 461, 183 Okla. 592, 83 P.2d 837, 839 (when discussing a 1922 contingency fee agreement the Court noted that it had "committed itself to the rule that a guardian can bind the estate of a minor, with approval of the proper court, when such services are necessary and beneficial to the estate).

ions was based upon the lawyer providing services to the ward, and not the guardian, and in such circumstances where the guardian could represent the minor at the hearing on the claim for such services without the guardian's interest conflicting with that of the ward.[16] These opinions show that while we recognized the importance of contingent fee agreements for some minors and required court approval of these contracts, *prior to the 1924 statute we also allowed a re-examination of a contingent fee contract at the time of the final report and accounting in the guardianship proceeding if certain circumstances were present.*

¶ 14 In the 1947 opinion, *Emery v. Goff,* 1947 OK 93, 198 Okla. 534, 180 P.2d 175, we adjudicated a controversy that involved a contract for a contingent attorney's fee approved by a court in a guardianship proceeding.[17] Although approval by the guardianship court therein occurred slightly prior to the enactment of the 1924 statute,[18] we relied upon the 1941 version of the 1924 statutory language to explain the power of a guardian to bind the ward or the ward's estate concerning "contingent fees or contracts for recovery of property agreed upon and approved by courts." [19] We also relied upon several opinions that predated the 1924 statute, and we explained that in those opinions a contingent fee agreement made for the benefit of the ward and approved by a court was enforceable against the estate of the ward.[20]

We did not construe the statute as barring a court from approving a contingent fee contract in a guardianship proceeding. A similar result occurred three years later in an appeal that challenged an order on a final account rendered in a guardianship of an incompetent. We explained that the prior order approving the contingency fee contract could not be vacated by the guardianship court on hearing a final account, but the correctness of the amount paid pursuant to that contract could be challenged.[21] In 1980 we addressed the power of a trial court to determine an attorney's fee where children were involved; we relied upon an opinion predating the 1924 statute; and we stated the "well-settled" principle of law that a guardian cannot make a contract which will bind the person or estate of the ward, *unless authorized by a court of competent jurisdiction.*[22]

■ ¶ 15 Statutory guardianship proceedings are regulated by statute.[23] The 1924 statute shows *no* language indicating any effort to regulate a lawyer's *contingent fee* contract. However, the 1924 enactment does mention contingent fee contracts in the context that they were approved by courts and not subject to "this Act." The "this Act" language in the 1924 statute refers to that specific enactment, *i.e.,* 1923–24 Okla. Sess. Laws. Ch. 84 §§ 1–8, inclusive. The 1924 enactment involved the disqualification of guardians; how money belonging to the es-

---

16. *In re White's Estate,* 1935 OK 1202, 175 Okla. 439, 52 P.2d 1074, 1076–1077. *See also First Nat. Bank & Trust Co. of Tulsa v. Bassett,* 1938 OK 461, 183 Okla. 592, 83 P.2d 837, 839 (a guardian can bind the estate of a minor, with approval of the proper court, when such services are necessary and beneficial to the estate).

17. *Emery v. Goff,* 1947 OK 93, 198 Okla. 534, 180 P.2d 175.

18. In *Emery v. Goff, supra,* a court-approved guardian's deed was executed "approximately ten years" prior to December 1931, *i.e.,* before the 1924 enactment. *Id.* 180 P.2d at 177. The deed was executed for payment of legal services previously rendered pursuant to a contractually created contingent fee agreement. *Id.*

19. *Emery v. Goff,* 180 P.2d at 180, quoting 58 O.S.1941 § 885.

20. In *Emery,* we quoted *Berryhill v. Spillers,* 1924 OK 1120, 105 Okla. 255, 232 P. 376, 377, and cited four additional opinions of this Court for

the proposition that: "The approval of the [contingent fee] contract by the court settled the validity of the contract as between the parties as to the question of the reasonableness of the compensation, as fixed by the attorney for his services to be performed by the minors." *Emery,* 180 P.2d at 179 –180. *See also Emery,* 180 P.2d at 179, *quoting First Nat. Bank & Trust Co. of Tulsa v. Bassett,* 1938 OK 461, 183 Okla. 592, 83 P.2d 837, 838 ("There can be no question but that contracts made for the benefit of the ward's estate and approved by the proper court are enforceable.").

21. *Armstrong v. Martin,* 1950 OK 230, 203 Okla. 565, 223 P.2d 1072.

22. *Abel v. Tisdale,* 1980 OK 161, 619 P.2d 608, 610, quoting *William Cameron & Co. v. Yarby,* 1916 OK 713, 71 Okla. 79, 175 P. 206, 207.

23. *In re Guardianship of Deere,* 1985 OK 86, 708 P.2d 1123, 1125.

tate was to be invested; a definition of incompetency; and compensation for auditors, guardians, and lawyers. Nothing in the 1924 enactment removed the guardianship jurisdiction of a County Court to approve a contingent fee contract made for the benefit of a ward. It was not until 1990 that the phrase "do not come within the provisions of this Act" was amended to read "do not come within the provisions of the Oklahoma Guardianship and Conservatorship Act." [24] The 1990 amendment which stated that contingent fees "do not come within the provisions of the Oklahoma Guardianship and Conservatorship Act" *also stated that these fees are approved by courts.* In summary, a contingent fee agreement is not subject to the Guardianship Act, but a court must still approve the agreement.

¶16 The requirement and practice of a County Court approving a lawyer's contingent fee contract continued *in guardianship proceedings after the 1924 enactment,* and the order of a County Court approving such a contract was deemed to be a final order not subject to collateral attack in that court. [25] Court approval of a contingent fee contract by a County Court in a guardianship was not based upon an express statute or an inherent equitable power, but from power directly conferred by a former provision of the Oklahoma Constitution. In *Evans v. Harris,* [26] an attorney's fee was sought based upon a County Court's prior order that approved of action by a guardian to employ counsel. A party made an argument that County Courts exercised a statutory power, and that a County Court lacked the power to consider a claim for an attorney's fee in the absence of direct statutory authority for a County Court to consider such a claim. We explained in 1916 that (1) a provision of the Oklahoma Constitution in effect at that time vested a "general jurisdiction" in County Courts for specific proceedings, [27] (2) this jurisdiction included express constitutional authority to "transact all business appertaining to the estates of ... minors, idiots, lunatics, persons non compos mentis," (3) the language of this constitutional provision "could hardly be broader," and (4) because of this broad language the County Court possessed jurisdiction to determine the issue of paying the attorney's fee, although this approval was in the absence of a direct statute expressly authorizing such. [28]

¶17 Similarly, when the power of a County Court was challenged because it authorized, without express statutory authority, a guardian to execute an oil and gas lease for a term extending beyond the ward's minority, we explained that (1) constitutional language in effect at that time vested an "exclusive jurisdiction" in County Courts, and (2) the *constitutional language was sufficiently broad to allow a guardian to engage in those activities that were traditionally approved by courts of chancery exercising an equity power on behalf of a ward.* [29] County Courts did not possess any inherent equitable powers and they were not courts of equity. [30] But when this Court construed the authority of a

24. 1990 Okla. Sess. Laws Ch. 323 § 64 (eff. July 1, 1990).

25. *See, e.g., Armstrong v. Martin,* 1950 OK 230, 203 Okla. 565, 223 P.2d 1072, 1074 (shortly after December 7, 1940, [after enactment of the 1924 statute] the contingent fee contract was executed and subsequently approved by the *county court,* and the order of that court approving the contract was a final order).

26. 1916 OK 596, 60 Okla. 27, 158 P. 898.

27. Okla. Const. Art. 7 § 13, in effect at that time provided in part as follows:

"The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition and distribution of the estates thereof."

28. *Evans v. Harris,* 158 P. at 898–899.

29. *Cabin Valley Mining Co. v. Hall,* 1916 OK 205, 53 Okla. 760, 155 P. 570, 572–574. *See also Hope v. Haddock,* 1928 OK 48, 133 Okla. 109, 271 P. 652, 655–656 (discussing *Cabin Valley* as well as the exercise of exclusive jurisdiction by a chancery court).

30. County Court in the exercise of its probate jurisdiction could vacate one of its orders. *Blancett v. Eslinger,* 1958 OK 65, 324 P.2d 273, 277–278. But it did not possess a general or inherent equitable power to vacate one of its final orders on a party's collateral attack. *Armstrong v. Mar-*

County Court in a guardianship proceeding, it examined the type of substantive relief in managing estates provided by other courts in guardianship proceedings, including those of a chancery court.[31] The County Court's authority was due to (1) the broad constitutional language, (2) a statute which required a guardian to manage the estate of a ward for the ward's best interest, and (3) a statute which authorized the County Court to make "such other orders" needed for the management of the ward's estate.[32]

¶ 18 County Courts were abolished by a constitutional amendment and the duties performed by such courts were given to the District Courts, courts which possess an "unlimited original jurisdiction of all justiciable matters" [33] *including an equity jurisdiction that does not rely upon specific statutory authority.*[34] Thus, in Oklahoma a District Court not only possesses the power to appoint a guardian pursuant to the Oklahoma Guardianship and Conservatorship Act, 30

O.S.2011 § 1–101 through § 4–904,[35] but also *an equitable power* to appoint a guardian ad litem for a minor, an incompetent, or a person needing court intervention for that person's protection.[36] We have explained that a District Court approves an attorney's fee for services rendered to the ward paid by the guardian ad litem.[37]

¶ 19 We have noted that the exercise of power by a County Court when approving a contingent fee contract came from the former constitutional provision vesting a "general jurisdiction," a general guardianship statute vesting a power to issue orders necessary for the ward's benefit, and the role of chancery courts providing certain types of relief within a guardianship proceeding. This explains why in 1924 the Legislature could create a statute that recognized the role of a County Court in approving contingent fee contracts *in guardianship proceedings* while at the same time stating that such contracts were not subject to "this Act," the 1924 enactment

---

tin, 1950 OK 230, 203 Okla. 565, 223 P.2d 1072, 1076. Similarly, a *County Court* did not possess an equitable power to impose obligations on a *de facto* guardian when a statutory guardianship was not properly before that court. *In re Mize's Guardianship,* 1943 OK 321, 193 Okla. 164, 142 P.2d 116, 118. However, a *District Court* could exercise an equitable power over a *de facto* guardian in the absence of an open statutory guardianship in a County Court. *Twine v. Edwards,* 1945 OK 319, 196 Okla. 382, 165 P.2d 143, 145–146.

31. *Cabin Valley Mining Co. v. Hall,* 1916 OK 205, 53 Okla. 760, 155 P. 570, 573 quoting with approval *Mallen v. Ruth Oil Co.,* 230 F. 497, 500 (E.D.Okla.1915) ("In the exercise of its exclusive jurisdiction to transact all business appertaining to the estates of minors, the county court must, I think, be held to have all the powers relating to the conduct of minors' estates which formerly belonged to courts of equity.").

32. *Hope v. Haddock,* 1928 OK 48, 133 Okla. 109, 271 P. 652, 655.

33. *In re Faulkner's Estate,* 1972 OK 160, 504 P.2d 875 (with the abolishment of County Courts the District Courts became possessed of unlimited original jurisdiction in probate proceedings).

34. *Merritt v. Merritt,* 2003 OK 68, ¶ 13, 73 P.3d 878, 883 ("The equitable jurisdiction of a district court is not dependent upon specific statutory authorization.") quoting *Marley v. Cannon,* 1980 OK 147, ¶ 8, 618 P.2d 401, 404.

35. The Oklahoma Guardianship and Conservatorship Act defines itself as including sections 1–101 through 5–101. 30 O.S.2011 § 1–101. Section 5-101 was repealed was repealed by Laws 1993, c. 155, § 4, eff. July 1, 1993.

36. *Vance v. Federal Nat. Mortg. Ass'n,* 1999 OK 73, n. 27, 988 P.2d 1275, 1281. *See Hoffman v. Morgan,* 1952 OK 199, 206 Okla. 567, 245 P.2d 67, 70 (appointment of a guardian ad litem by the District Court was required by 12 O.S.1951 § 228, replaced by 12 O.S. § 2017).

Paragraph "C" of 12 O.S.2011 § 2017, states as follows:
C. INFANTS OR INCOMPETENT PERSONS. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

37. *Sneed v. Sneed,* 1984 OK 22, 681 P.2d 754, 756; *Hoffman v. Morgan, supra,* 245 P.2d at 70. Cf. *Abel v. Tisdale,* 1980 OK 161, 619 P.2d 608, 610 ("The same interest which is served by requiring court approval of settlements in wrongful death cases involving infant beneficiaries justifies court approval of attorney's fees where minors are concerned.").

relating to compensation of guardians and lawyers. Similarly, a District Court in a guardianship proceeding is vested with a constitutional "unlimited original jurisdiction," possesses equitable powers such as those used in chancery courts to approve contingent fee contracts on behalf of a ward, and also possesses statutory authority to "make such further orders as the court deems necessary for the best interest of the ward for care of the ward and maintenance or management of the ward's property...."[38] Further, the express language of § 4–403(D) recognizes court approval of contingent fee agreements.

¶ 20 Contemporaneously with the 1924 enactment we observed that public policy favored allowing payment of a contingency fee contract for legal representation provided to the estate of a ward when the estate did not possess funds to employ a lawyer without such a contract.[39] Contingency fee agreements still serve a public policy of providing a practical means for some people to have access to courts.[40] Courts still possess juris-

diction *and the duty* to protect the financial interests of minors, incompetents, and other persons needing court intervention from unreasonable attorney's fees.[41] We also observe that although a "guardian" is distinct from a "guardian ad litem" for purposes of the Oklahoma Guardian and Conservatorship Act,[42] the public policy for protecting a statutory ward is the same as that for protecting a ward created by an exercise of the trial court's equity powers, and the public policy of protecting the interests of wards who are minors is equally applicable to protecting the interests of other types of wards, such as in the case before us.[43]

¶ 21 We therefore conclude that a District Court possesses jurisdiction in a guardianship proceeding to approve a contingent fee agreement made on behalf of a ward. Warren filed his motion for court approval in the guardianship proceeding, and he alleged that the fee was a reverse contingent fee to be paid from the estate of the ward for services provided to the ward.[44]

**38.** 30 O.S.2011 § 3-113(E).

We also note that 30 O.S.2011 § 1-114(A) states that "In all cases the court making the appointment of a guardian has exclusive jurisdiction to control such guardian in the management and disposition of the person and property of the ward." Our opinion herein makes no conclusion or holding addressing whether a non-guardianship District Court proceeding could possess jurisdiction to approve or disapprove a contingent fee contract involving a ward who is subject to an open and continuing guardianship before a different District Court.

**39.** *Berryhill v. Spillers*, 1924 OK 1120, 105 Okla. 255, 232 P. 376, 378. *See also Kelly v. Kelly*, 1928 OK 736, 134 Okla. 172, 272 P. 838, 840 (Court reversed the judgment of a District Court that canceled a contingency fee contract and made an award based upon a *quantum meruit* basis because the County Court had previously approved the amount and reasonableness of the compensation via the contract; and the Court noted that compensating the lawyer based upon the contingency fee agreement appeared to be more meritorious than in *Berryhill*).

**40.** *State ex rel. Oklahoma Bar Association v. Flaniken*, 2004 OK 6, ¶ 10, 85 P.3d 824, 827; *Sneed v. Sneed*, 1984 OK 22, 681 P.2d 754, 756.

**41.** *Sneed v. Sneed* 1984 OK 22, 681 P.2d 754, 756 (cases involving minors impose a duty upon the trial court to protect the child's interest, and while a guardian *ad litem* has the power to employ and select counsel, the amount of attorney's fees is determined by the trial court, after

consideration of all the attendant circumstances); *Aubrey's Estate v. De Lozier*, 1927 OK 7, 128 Okla. 79, 261 P. 192, 195 (we recognized the role of a court to provide protection to "helpless minors," and we stated that "a deaf ear will never be turned to their cries of distress and supplication for justice, when called to the attention of this court on proper proceedings.").

**42.** 30 O.S.2011 § 1-106: "The term 'guardian' includes persons appointed as general and limited guardians of the person, general and limited guardians of property, and special guardians, but does not include persons appointed as guardians ad litem."

**43.** *Gomes v. Hameed*, 2008 OK 3, ¶ 26, 184 P.3d 479, 489 ("Although many of our cases involve minors, the same rationale that supports protection of minors also supports protection of incapacitated or incompetent persons."); *Abel v. Tisdale*, 1980 OK 161, 619 P.2d 608, 610 ("The same interest which is served by requiring court approval of settlements in wrongful death cases involving infant beneficiaries justifies court approval of attorney's fees where minors are concerned."). *See also Matter of Bradshaw's Estate*, 1980 OK 17, 606 P.2d 578, at note 8, *supra*.

**44.** A reverse contingent fee agreement determines the amount of the lawyer's fee, in whole or in part, based upon the amount of money the lawyer's services save the client given the client's potential liability. *Arnall v. Superior Court*, 190

We thus hold that the guardianship court possessed *jurisdiction* to hear Warren's motion for approval of the contingent fee contract.

## II. Timeliness of Motion for Approval of a Lawyer's Contingent Fee Contract

¶ 22 There remains the question presented by the parties as to the meaning of "do not come within the provisions of the Oklahoma Guardianship and Conservatorship Act," as such relates to the timing of the request for approval and payment of the fee. The trial court concluded that while contracts may be approved after negotiation by a guardian, 30 O.S. § 4–403(C) *required* approval from the court *prior to payment.* Paragraph "C" states that "All compensation and reimbursements pursuant to the provisions of this section shall be approved by the court prior to payment." The trial court denied approval of the contingent fee contract based, in part, upon the fact that approval had not been sought prior to payment. However, the trial court also indicated that Warren was entitled to reasonable compensation to be paid from the estate. The trial court did not explain whether this reasonable compensation was also subject to the condition in paragraph "C" of court approval prior to payment. We have concluded that the guardianship court has jurisdiction to hear a motion for approval of a contingent fee contract. The next issue is whether paragraph "C" applies to an order of a guardianship court that approves a lawyer's contingent fee contract on behalf of a ward or the interests of a ward.

¶ 23 Paragraph "C" refers to compensation and reimbursements "pursuant to the provisions of this section." Is a lawyer's contingent fee contract a form of compensation or reimbursement pursuant to § 4–403? Our opinions prior to the 1924 enactment explained that the approval of a contingent fee contract by a court was based upon the necessity of the contract and the reasonableness of the fee provided therein. The 1924 version of the statute expressly set forth reasonable fees in the form of maximum fees based upon the value of the estate involved. The express statutory amounts were later changed to a "reasonable compensation."[45] However, the expressly stated amounts for fees in the 1924 statute and the subsequent "reasonable compensation" language did *not* include express amounts for, or limitations on, a contract for a lawyer's contingent fee.[46] We thus hold that paragraph "C" is not a condition imposed upon court approval of a lawyer's contingent fee contract in a guardianship proceeding.[47]

¶ 24 The trial court also denied the motion for approval of the fee because of the passage of time from the contract's date of execution to the date Warren sought court approval of the contract. This reason for the denial appears to be unwarranted for the following reasons: (1) Guardian did not plead or rely upon any statutory time limit to bar the motion; (2) In an equity proceeding the *mere* passage of time is not a ground for application of laches;[48] (3) The mere passage of time will not prevent a court from awarding relief in an open and continuing proceed-

Cal.App.4th 360, 371, 118 Cal.Rptr.3d 379, 387 (2010) quoting Black's Law Dictionary 338 (8th ed.2004) (*contingent fee*); *Alexander v. Inman,* 903 S.W.2d 686, 696 n. 15 (Tenn.Ct.App.1995). The record appears to show a dispute between the parties on the ability of the estate to pay Warren for his services and the source of the funds used to pay him. O.R. at 111, Reply of Attorney/Creditor to Guardian's Objection to Approve Representation Contract and Fee Amount. Our classification of the agreement as a reverse contingent fee agreement is based solely upon the nature of the agreement as discussed by the parties, and we express no opinion on the disputed issue of the estate's ability to pay and the source of the funds used.

45. *See, e.g.,* 30 O.S.2001 § 4–403 which states that: "An attorney ... for a ward or a subject of a proceeding pursuant to the Oklahoma Guardianship and Conservatorship Act or whose services are obtained by a guardian on behalf of a ward is entitled to reasonable compensation to be paid from and as a charge against the estate of the ward." *Id.* at § 4–403(A)(1) (material omitted).

46. 1923–24 Okla. Sess. Laws. Ch. 84 § 5 (Approved March 21, 1924), at n.7, *supra.*

47. Of course, it is still a well-settled principle of law that a guardian cannot make a contract which will bind the person or estate of the ward, unless authorized by a court of competent jurisdiction. See the opinions cited herein on this point. Court approval prior to payment is thus a prudent course of action.

48. *Hedges v. Hedges,* 2002 OK 92, ¶ 8, 66 P.3d 364, 369 (when invoking laches a party is required show more than a mere lapse of time; the party must show a delay with a resulting prejudice to that party); *Carnes v. Thomas,* 1955 OK

ing,[49] and the guardianship in this case was open and continuing; (4) Laches is an affirmative defense that is waived if not pled,[50] and the record before us does not show such a defense pled by Guardian, and (5) A court generally may not raise *sua sponte* a nonjurisdictional affirmative defense such as laches;[51] and if it does, its judgment risks becoming *coram non judice* on that issue.[52]

¶ 25 Further, in *Abel v. Tisdale*, 1980 OK 161, 619 P.2d 608, we discussed a trial court's role in determining the proper amount for a contingent fee contract involving minors where that determination occurred *after* a jury trial, appeal, and settlement. We discussed the procedure for the trial court upon remand and, for example, we approvingly discussed (1) the use of "hindsight" by the trial court, (2) when a fee was based on a percentage the court should decrease the amount of the fee as the recovery increased, and (3) that the trial court "should not attempt solely to assess the reasonableness of a contingent fee agreement at the time it was entered into."[53] Therein the determination of the trial court on remand occurred a few years *after* the mother of the minors entered into a fee agreement. In *Sneed v. Sneed*, 1984 OK 22, 681 P.2d 754, we also discussed several factors for the trial court to consider regarding a contingent fee contract previously executed by a guardian ad litem on behalf

of a minor.[54] These two cases serve as examples where court approval of a contingent fee agreement involving a minor need not occur contemporaneously with the date the agreement is made.

■ ¶ 26 In summary, we hold that § 4-403(C) is not a condition imposed upon court approval of a lawyer's contingency contract in a guardianship proceeding, and that the *mere* delay between negotiation of the contingent contract and Warren's motion seeking court approval is insufficient to deny court approval of the contract.

### III. Conclusion

■ ¶ 27 Guardian made various allegations in the trial court, some of which related to the Oklahoma County proceeding, and these included theories relating to breach of contract, fraud, breach of a fiduciary duty, and negligence. These theories and related allegations were raised by Guardian as legal justifications to prevent judicial approval and enforcement of the reverse contingent fee contract. Guardian also stated that any fee awarded to Warren should be based upon *quantum meruit*. Warren disputed both allegations of fact and theories of law raised by Guardian. This Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of its appellate jurisdiction.[55] Warren's mo-

33, 280 P.2d 474, 476 (whether laches will be applied in any particular case does not depend on lapse of time, but on facts and circumstances disclosed).

**49.** *See, e.g., Keenan v. Clark*, 1947 OK 380, 199 Okla. 517, 188 P.2d 219 (mere lapse of time after the rendition of a judgment will not deprive the court of jurisdiction to hear and determine the final report of the receiver and allow compensation and enforce collection thereof from such of the parties to the action as in equity ought to pay the same).

**50.** *Sullivan v. Buckhorn Ranch Partnership*, 2005 OK 41, ¶ 32, 119 P.3d 192, 202; *Furr v. Thomas*, 1991 OK 93, ¶ 23, 817 P.2d 1268, 1272.

**51.** *Reddell v. Johnson*, 1997 OK 86, ¶ 10, 942 P.2d 200, 203.

**52.** Generally, issues consist of facts or conclusions of law that are presented by one party's pleadings and controverted by the other party's pleadings, *Boston v. Buchanan*, 2003 OK 114, ¶ 6, 89 P.3d 1034, 1038; the issues are memori-

alized by a pretrial order which may also supersede the pleadings, 12 O.S.2011 Ch. 2, App., Dist. Ct. R. 5(I); and the pleadings may be amended to conform to evidence, 12 O.S.2011 § 2015(B). Regardless of how issues are properly made part of the trial court record, a judgment outside the scope of the issues presented for adjudication by the trial court is of no force and effect, or *coram non judice*, and void at least insofar as it goes beyond the issues properly presented. *Union Oil Co. of Calif. v. Brown*, 1981 OK 112, 641 P.2d 1106, 1108.

**53.** *Abel v. Tisdale*, 1980 OK 161, 619 P.2d 608, 612.

**54.** *Sneed v. Sneed*, 1984 OK 22, 681 P.2d 754, 757.

**55.** *State of Oklahoma v. Torres*, 2004 OK 12, ¶ 8, n. 15, 87 P.3d 572, 578; *Evers v. FSF Overlake Associates*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587. If the record is sufficient, this court will—in an appeal from an equity decision—render that decree which the chancellor should have entered.

tion for approval of the contingent fee agreement and the Guardian's claims and defenses must be determined on remand. We make no conclusions whether a contingent fee should be approved herein, or what compensation should be proper if such a fee is approved or not approved.

¶ 28 We hold that a District Court possesses jurisdiction to adjudicate in a guardianship proceeding a motion seeking court approval of a lawyer's contingent fee contract. We hold that a guardian's failure to obtain court approval of a contingent fee agreement prior to payment under that agreement is *not*, by itself, a legally sufficient reason for a court to deny a motion to approve the agreement; and that the mere passage of time between creation of a contingent fee agreement and when it is presented to a court for approval in an open and continuing guardianship proceeding is *not* a legally sufficient reason to deny approval of that agreement. The opinion of the Court of Civil Appeals is vacated, the order of the trial court is reversed, and the matter is remanded to the District Court for further proceedings consistent with this opinion.

¶ 29 TAYLOR, C.J., KAUGER, WINCHESTER, EDMONDSON, REIF, and COMBS, JJ., concur.

¶ 30 COLBERT, V.C.J., and WATT, J., not participating.

¶ 31 GURICH, J., recused.

---

But when reviewing an equity case, an appellate court cannot exercise first—instance cognizance by making original findings of fact. *Hedges v. Hedges*, 2002 OK 92, ¶ 23, 66 P.3d 364, 373.

Unsworn statements by counsel in both a motion and a response by opposing counsel do not constitute evidence. *Crest Infiniti, II, LP v. Swinton*, 2007 OK 77, ¶ 10, 174 P.3d 996, 1002.